In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2962

PHILLIP A. COLLINS, on behalf of
himself and all others similarly situated,

*Plaintiff-Appellant,*

*v.*

AMERICA'S SERVICING COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08-cv-00122—**Robert L. Miller, Jr.**, *Judge.*

ARGUED MAY 6, 2011—DECIDED JULY 13, 2011

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Phillip Collins, one of the many
Americans who purchased a house in the early 2000s,
filed suit against America's Servicing Company (ASC),
claiming it violated the Real Estate Settlement Procedures
Act (RESPA), 12 U.S.C. §§ 2605, *et seq.*, as well as Indiana's
Home Loan Practices Act (IHLPA), IND. CODE § 24-9-1-1

*et seq.*, when, after he fell behind in his payments, it assessed monthly late fees and reported the late payments on his mortgage, thus preventing him from refinancing his house and ultimately leading to foreclosure proceedings. The district judge, finding that Collins failed to prove the necessary elements to survive summary judgment, granted ASC's motion. Collins now appeals.

The facts of this case are an all-too-familiar story of our nation's current economic predicament. In August 2004, Collins secured financing from WMC Mortgage Company to purchase a home in Lowell, Indiana. After closing on the loan, WMC assigned the servicing obligations to ASC. Under the terms of the loan, mortgage payments were due on the first of each month, with a 15-day grace period after which ASC assessed a late fee. And if Collins skipped a month, his next payment was applied to the principal and interest for the missed month.

In the fall of 2006, Collins ran into financial troubles and missed his September and October payments. In November, he contacted ASC to discuss restructuring his loan repayment. After speaking with an ASC customer service representative named "Christina," Collins entered into a forbearance agreement. Under the terms of the agreement, he would not have to make his November payment; rather, it would be pro-rated and added to his regular monthly payments over the next eight months—from December 2006 through July 2007. Collins had until the 15th of each month to make his payments, but there was no grace period before ASC

would assess a late fee. The agreement also stated that credit reporting would continue until the loan was current.

When Collins got off the phone, he had a slightly different understanding of the terms; he thought that all he had to do was make his regular monthly payment (plus the pro-rated amount of the November payment) by the due date for each month of the forbearance agreement, and that by entering into the forbearance agreement he was protecting his credit so he could refinance his home the following August. In other words, Collins believed that the agreement was protecting him from piling up late fees and negative credit reporting.

Collins made payments in the amount required under the forbearance agreement around the 15th of each month from December through March.[1] In April, Collins received a second forbearance agreement from ASC. Under this agreement, ASC agreed not to accelerate the total loan amount if Collins made payments by the 27th of the month from April through July. Again, there was no grace period before late fees would be assessed. This second agreement also stated, "credit reporting will continue to occur until the loan is current." Collins made payments around the 27th

---

[1] Collins claims he made all payments during the first forbearance agreement on time, but according to the documents ASC produced (which are recreated in a chart), Collins failed to pay his March payment before the 15th of the month.

from April through July.[2] ASC charged Collins late fees every month between November and July.

In August 2007, Collins sought to refinance his home after he received a notice that his interest rate was going to go up. But he learned that ASC had reported his late payments to credit bureaus during the ongoing forbearance agreement periods. He then sent a letter to ASC referencing his rights under RESPA, asserting that certain late fees on his account were erroneous, and requesting that ASC remove the late fees and retract any negative credit reporting.

ASC sent a letter to Collins, acknowledging receipt of his request, providing some of the information he requested, explaining why other information was not included, and informing Collins that it would not remove the late fees.[3] Consequently, Collins was unable to refinance his mortgage, he is unable to pay the increased monthly mortgage payments, and he now faces a foreclosure action.

Collins filed suit against ASC alleging violations of RESPA and IHLPA, breach of contract, and pyramiding of late fees. The district judge first held that ASC could not be liable under RESPA because it provided Collins with a proper and timely response to his inquiry, as the

---

[2]  Again, Collins claims he made all payments on time during the second forbearance agreement, but according to ASC's records, he made late payments in April, June, and July.

[3]  ASC's response was in compliance with RESPA.

statute requires. The judge then—in an of exercise of supplemental jurisdiction over the state law claims for reasons of judicial economy and fairness—found that Collins failed to challenge ASC's evidence and failed to present evidence that ASC breached any provision of the mortgage or forbearance agreements. Accordingly, the judge held that ASC was entitled to summary judgment on the breach of contract claim. Finally, the judge ruled that Collins failed to point to any evidence establishing that ASC knowingly or intentionally made material misrepresentations or concealed material information regarding the terms of any of the agreements, and therefore ASC was entitled to summary judgment on the IHLPA claim. On his appeal, Collins argues that the judge erred in granting ASC's summary judgment motion because ASC breached the mortgage contract and it violated the IHLPA. He does not challenge the RESPA ruling on appeal.

We review the district court's grant of summary judgment *de novo*. *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 864 (7th Cir. 2009). Summary judgment is appropriate where the admissible evidence shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008) (internal quotation marks omitted). We view the record in the light most favorable to Collins, drawing all reasonable inferences in his favor. *McCann*

*v. Iroquois Memorial Hospital*, 622 F.3d 745, 752 (7th Cir. 2010).

We begin with Collins' claim that ASC breached the terms and conditions of the mortgage and forbearance contracts. There are three contracts at issue in this case: the original mortgage, the first forbearance agreement, and the second forbearance agreement. Under the mortgage agreement, payments were due the first of every month, but Collins had a 15-day grace period before ASC assessed a late charge of 5%. Payments to ASC were first applied to any past-due balance; if there were remaining funds, they were applied to the current month's payment. Failure to cover the current month's payment triggered a late fee. Under the first forbearance agreement, the November 2006 payment was spread out over the next eight installments, and the payment date was moved to the 15th of the month. But the agreement clearly stated that there was no grace period, that all of the provisions of the original mortgage remained in full force and effect, and that the contractual due date of the loan would continue to be reported to credit bureaus on a monthly basis. Under the second forbearance agreement, ASC agreed to move the payment date to the 27th, again with no grace period, and made clear that "credit reporting will continue to occur until the loan is current."

Collins argues that ASC breached the contracts by assessing late fees and reporting late payments even though he paid on time and in full as the forbearance agreements required. ASC, however, contends that it

did not breach the terms of the contracts because at the time Collins called ASC and entered into the first forbearance agreement, he had already missed two payments—September and October 2006—and although the agreement pro-rated the November payment and moved the due date to the 15th of the month, it did not change the fact that those two previous payments were still outstanding.

This fact is devastating to Collins' claim. The original mortgage agreement made clear that if Collins missed a payment, his next payment would be applied to the "Periodic Payment in the order in which it became due." And the forbearance agreements clearly stated that this provision remained in effect. Therefore, despite having entered into the forbearance agreement, when Collins made a payment on November 2, 2006, it was applied to his missed September payment. And when he made his December payment—on December 15 in accordance with the first forbearance agreement—it was applied to his missed October payment. Therefore, even if Collins had continued to pay on time in accordance with the forbearance agreements, his payments were always "late" because he was more than a month behind entering into the agreement, and he never paid enough extra to dig himself out from under the missed payments and bring the loan current. As the chart below shows, at no point before August 2007 did Collins catch up on his late payments. Accordingly, ASC was within its contractual rights to assess late fees through September 2007.

| Month | Due Date (grace period) | Date Payment Received | Month Payment Applied to | Late fee imposed? |
|---|---|---|---|---|
| Jan. '06 | 1-1 (15 days) | 1-20-06 | Jan. '06 | yes |
| Feb. '06 | 2-1 (15 days) | 2-7-06 | Feb. '06 | no |
| Mar. '06 | 3-1 (15 days) | 3-6-06 | Mar. '06 | no |
| Apr. '06 | 4-1 (15 days) | 4-6-06 | Apr. '06 | no |
| May '06 | 5-1 (15 days) | 5-10-06 | May '06 | no |
| June '06 | 6-1 (15 days) | | | |
| July '06 | 7-1 (15 days) | 7-21-06 | June '06 | yes |
| Aug. '06 | 8-1 (15 days) | 8-4-06 | July '06 | yes |
| | | 8-16-06 | Aug. '06 | yes |
| Sept. '06 | 9-1 (15 days) | | | |
| Oct. '06 | 10-1 (15 days) | | | |
| Nov. '06* | pro-rated | 11-2-06 | Sept. '06 | yes |
| Dec. '06* | 12-15 | 12-15-06 | Oct. '06 | yes |
| Jan. '07* | 1-15 | 1-12-07 | Nov. '06 | yes |
| Feb. '07* | 2-15 | 2-15-07 | Dec. '06 | yes |
| Mar. '07* | 3-15 | 3-16-07 | Jan. '07 | yes |
| Apr. '07* | 4-27 | 4-30-07 | Feb. '07 | yes |
| May '07* | 5-27 | 5-25-07 | Mar. '07 | yes |
| June '07* | 6-27 | 6-28-07 | Apr. '07 | yes |

| July '07* | 7-27 | 7-30-07 | May '07 | yes |
|-----------|----------|---------|----------|-----|
| Aug. '07 | 8-1(15) | 8-30-07 | June '07 | yes |
| Sept. '07 | 9-1(15) | 9-17-07 | July '07 | yes |

 * Forbearance agreements in effect.

Collins argues that when he set up the first forbearance agreement in November 2006, he was told that if he made payments in accordance with the new contract, no late fees would be assessed and no negative credit reports would be made. And Collins is probably correct—when he got off the phone with ASC, that was likely (and reasonably) his understanding. But, as ASC notes, under the Indiana Lenders Liability Act, Collins cannot make a breach of contract claim based on alleged oral modifications to loan agreements. IND. CODE § 26-2-9-4(b). And as we have already found, the language of the contracts is clear—ASC had the right at all times, under the original contract and both forbearance agreements, to charge Collins late fees and report his late payments. Moreover, looking at the chart, Collins made late payments even after the forbearance agreements were in effect, failing to pay by the hard time deadline in March, April, June, and July. Therefore, the judge correctly ruled that Collins' breach of contract claim cannot survive ASC's summary judgment motion.

Collins next argues that ASC's conduct violated the IHLPA. To prevail on this claim, he must show that ASC (1) knowingly or intentionally, (2) made a material

misrepresentation, or (3) concealed material information regarding the terms or conditions of the transactions. IND. CODE § 24-9-2-7(a). The judge found that Collins failed to prove any of these elements.

Collins contends that ASC violated the IHLPA because it did not consider the forbearance agreements when assessing late fees and that he had every expectation, as long as he made the payments according to the forbearance agreements, that he would not be assessed late fees. Unfortunately for Collins, the forbearance agreements specifically provided that all terms of the original mortgage remained in full force and effect, including the provision that payments would be applied in the order they became due. Moreover, there was no grace period in either of the forbearance agreements. Therefore, as Collins continued to fail to make timely payments, ASC had the right to assess late fees and make negative credit reports under the terms of all three contracts. Accordingly, Collins cannot prove that ASC knowingly or intentionally made a material misrepresentation or concealed information, because the plain language of the forbearance agreements made clear that all the provisions of the original mortgage applied. *See Baker v. America's Mortgage Servicing, Inc.*, 58 F.3d 321, 328 (7th Cir. 1995) (assessment of late fees under a mortgage agreement does not violate a state's consumer fraud statute if they are assessed in accordance with the express terms of the contract).

For these reasons, the judge properly granted ASC's summary judgment motion with regard to both Collins'

breach of contract and IHLPA claims. The judgment of the district court is AFFIRMED.