Charles G. REEDER, as Special Administrator of Estate of Denise C. Palmer, Deceased, and Dennis W. Palmer, Appellants (Plaintiffs),

v.

A. Patricia HARPER, M.D., Indianapolis Breast Center, Carol C. Eisenhut, M.D., and Diagnostic Cytology Laboratory, Inc., Appellees (Defendants).

No. 49S05–0101–CV–37.

Supreme Court of Indiana.

May 30, 2003.

C. Warren Holland, Michael W. Holland, Holland & Holland, Indianapolis, IN, Attorneys for Appellants.

Michael G. Getty, Rori L. Goldman, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorneys for A. Patricia Harper, M.D. and Indianapolis Breast Center.

John David Hoover, J. Scott Fanzini, Hoover, Heath, Baker & Heath, Indianapolis, IN, Attorneys for Carol C. Eisenhut, M.D. and Diagnostic Cytology Laboratory, Inc.

## ON PETITION TO TRANSFER

RUCKER, Justice.

### Case Summary

Alleging three physicians failed to diagnose and treat her breast cancer, Denise Palmer filed a complaint for medical malpractice against them and the clinic and laboratory with which two of the physicians were associated. When Denise died, her husband along with her estate amended the complaint to assert a survivorship claim and a claim for wrongful death. The trial court granted summary judgment in favor of the defendants on both claims. On review, the Court of Appeals affirmed. *Reeder v. Harper*, 732 N.E.2d 1246 (Ind. Ct.App.2000). Having previously granted transfer, we now reverse the trial court's entry of summary judgment.

### Facts and Procedural History

The record shows that Denise suffered from a history of benign masses in her breasts. During a routine annual examination in July 1991, Denise complained to her obstetrician-gynecologist about a lump in her left breast. The doctor, Timothy Feeney, advised her there was nothing to worry about and made no recommendation concerning further treatment. However, the lump increased in size, and Denise began experiencing pain when moving her left arm. On December 13, 1991, Denise called Dr. Feeney's office complaining about the lump and the pain. On the advice of Dr. Feeney's nurse, Denise went to the office that day. Conducting an examination and noting the lump, the nurse immediately called the Indianapolis Breast Center to schedule an appointment for Denise with Dr. A. Patricia Harper. Because Dr. Harper was very busy and did not think the matter urgent, she did not see Denise until January 10, 1992. At that time, Denise went to the Breast Center and underwent a bilateral mammogram. In addition, Dr. Harper performed a needle aspiration biopsy on the lump in Denise's left breast. The specimen from the procedure was shipped to the Diagnostic Cytology Laboratory. There, it was examined by Dr. Carol Eisenhut who determined that the cells were benign.

The lump in Denise's left breast continued to increase in size, and she continued to experience pain when moving her left arm. After again consulting Dr. Feeney, Denise was referred to Dr. Thomas

Schmidt in February 1992. Having little faith in needle aspiration biopsies, Dr. Schmidt performed a surgical excisional biopsy on the mass in Denise's left breast. This biopsy showed that Denise had cancer. A second opinion by another doctor confirmed the diagnosis.

In July 1993, Denise filed a proposed medical malpractice complaint against Doctors Feeney, Harper, and Eisenhut along with the Indianapolis Breast Center and the Diagnostic Cytology Laboratory (referred to collectively as "Healthcare Providers"). The complaint alleged that Healthcare Providers' negligence in failing to diagnose and treat Denise's cancer caused her physical pain and mental anguish. Denise's husband Dennis joined the complaint on a loss of consortium claim. Between March 1992 and January 1994, Denise underwent three rounds of chemotherapy, a modified radical mastectomy of her left breast, radiation therapy, and surgery to remove a malignant tumor that had spread to her right breast. Despite these efforts, Denise died on March 15, 1994, at the age of forty.

In January 1996, Dennis along with Denise's estate (referred to collectively as "the Palmers") amended the proposed complaint to reflect that Denise had died. Count I alleged a survivorship action for Denise's physical pain and mental anguish prior to her death as well as Dennis' claim for the loss of his wife's services prior to her death. Count II alleged an action for Denise's wrongful death on behalf of Dennis and the parties' three minor children.

The Medical Review Panel issued its unanimous opinion in June 1996. The Panel found that Dr. Harper and the Breast Center "deviated from the appro-priate standard of care in failing to recommend surgical excisional biopsy of an enlarging solid mass." R. at 34. The Panel also found that Dr. Eisenhut and the Laboratory "deviated from the appropriate standard of care by failing to report that the patient's lesion needed to be excised." R. at 34–35. However, the Panel concluded "the evidence indicates such deviations were not a factor in altering the course of the patient's disease or in hastening her death." R. at 35.

In August 1996, the Palmers filed a complaint in Marion Superior Court setting forth the same claims as those in the amended proposed complaint. Thereafter, Healthcare Providers moved for summary judgment, designating the Panel opinion among other things. In opposition, the Palmers designated several items of evidence, including the affidavit of Dr. William Alpern. His affidavit contradicted the Panel's conclusion and opined instead that Healthcare Providers' actions altered the course of Denise's disease and hastened her death. After a hearing, the trial court denied Healthcare Providers' motion for summary judgment.

Sometime in the summer of 1997 Dr. Alpern died. Thereafter, in June 1999 Healthcare Providers renewed their motion for summary judgment.[1] In opposition, the Palmers again designated Dr. Alpern's affidavit. This time, the trial court granted the motion. On review, the Court of Appeals observed that the only evidence the Palmers designated regarding causation for both the survivorship and wrongful death claims was the affidavit of Dr. Alpern. According to the court, because Dr. Alpern was now dead, the facts to which he testified in his affidavit would be hear-

---

1. For the sake of consistency we continue to refer to the Appellees/Defendants collectively as "Healthcare Providers." However, Dr. Feeney did not renew his motion for sum-mary judgment. The cause against him is still pending before the trial court, and he is not a party to this appeal.

say and thus inadmissible at trial. As a result, the Court of Appeals affirmed the trial court's grant of summary judgment in favor of Healthcare Providers. We reverse.

### Standard of Review

On appeal, the standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Tom–Wat, Inc. v. Fink*, 741 N.E.2d 343, 346 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 984 (Ind.1998). Review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Estate of Shebel ex rel. Shebel v. Yaskawa Elec. Am., Inc.*, 713 N.E.2d 275, 277 (Ind. 1999).

### Discussion

Indiana Trial Rule 56(E) provides in pertinent part that "[s]upporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (emphasis added). We acknowledge that the declarations of a decedent offered at trial as proof of their contents are hearsay and thus inadmissible as such unless falling within one of the exceptions to the hearsay rule. *See Am. United Life Ins. Co. v. Peffley*, 158 Ind.App. 29, 301 N.E.2d 651, 658 (1973). Indeed, most declarations of an unavailable witness, including affidavits, are not admissible at trial absent an exception to the hearsay rule. However, this case presents a slightly different issue, namely: in the context of summary judgment, is there a distinction between a hearsay affidavit offered as evidence on the one hand versus the facts established by the affidavit on the other. This Court has not spoken on the issue,[2] but because the federal counterpart to Indiana Trial Rule 56(E) is identical, we look to the federal courts for guidance.

The United States Supreme Court has indicated that at least some forms of inadmissible evidence can be considered at the summary judgment stage of the proceedings: "We do not mean that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Seizing in part on this declaration, a number of federal courts have found that evidence that would be inadmissible at trial may nevertheless raise a material issue of fact on summary judgment if that evidence can be rendered admissible at trial. For example, in *Winskunas v. Birnbaum*, 23 F.3d 1264 (7th Cir.1994), the Seventh Circuit explained that it is the substance of the affidavit and not the form that controls:

The evidence need not be in admissible *form;* affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in *content* .... Occasional statements in cases that the party op-

**2.** *Compare Spier v. City of Plymouth*, 593 N.E.2d 1255, 1260 (Ind.Ct.App.1992) ("[A] party resisting a motion for summary judg- ment may not use an affidavit which consists of inadmissible hearsay to create a dispute as to an issue of material fact."), *trans. denied.*

posing summary judgment must present admissible evidence should be understood in this light, as referring to the content or substance, rather than the form, of the submission.

*Id.* at 1267–68 (citation omitted) (italics in original); *see also McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir.1996) (holding that evidence in an inadmissible form may be considered at the summary judgment stage as long as the evidence is submitted in an admissible form at trial), *aff'd sub. nom, McMillian v. Monroe County, Ala.,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Treff v. Galetka,* 74 F.3d 191, 195 (10th Cir.1996) ("The nonmoving party is not required to produce evidence in a *form* that would be admissible at trial, but the content or substance of the evidence must be admissible.") (quotation omitted) (italics in original); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.,* 998 F.2d 1224, 1234–35 n. 9 (3d Cir.1993) (holding that hearsay evidence may be considered on summary judgment if the same evidence would be admissible in another form at trial).

We find particularly instructive the case of *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601 (7th Cir.2000). In *Oto* a dispute arose concerning the authenticity of plaintiff's signature on a change of beneficiary form. Plaintiff had signed an affidavit declaring that the signature was fraudulent. He also gave a deposition consistent with the affidavit. While the case was pending the plaintiff died. He was substituted in the action by an executor. Relying on the affidavit as well as the deposition, the executor moved for summary judgment, which the District Court granted. On appeal to the Seventh Circuit the appellant argued, among other things, that the District Court should not have considered the decedent's affidavit in ruling upon the motion. According to the appellant, the affidavit was inadmissible hearsay. Appellant also contended that he did not have an opportunity to question the decedent on the substance of the affidavit. The Seventh Circuit rejected this argument. We recite its reasoning here in some detail:

[Appellant's] other argument, that the affidavit should not have been considered by the District Court in ruling on the motion for summary judgment because [the decedent] is now unavailable to testify, is actually a challenge to the affidavit's admissibility at trial. To mix the two would require us to read a "cross-examination" requirement into Rule 56 that is not there. Certainly, the affidavit would not be admissible at trial unless he were able to cross-examine [the decedent] as to its contents. A motion for summary judgment brought under the Federal Rule of Civil Procedure 56, however, has no such requirement. Rule 56 merely provides for the submission of affidavits in support of or opposition to a motion for summary judgment. As long as the affidavit meets the requirements of subsection (e), it can be considered by the District Court in ruling on the motion.... Since [the decedent's] affidavit was "in the precise form" contemplated by Rule 56, was made under oath and based upon his personal knowledge, we hold that the District Court did not err in considering its contents in ruling on the motion for summary judgment.

*Id.* at 604–05.

■ We find the foregoing authority persuasive and equally applicable to Indiana's Trial Rule 56(E). In essence, an affidavit speaks from the time it is made. Hence, an affidavit that would be inadmissible at trial may be considered at the summary judgment stage of the proceedings if the substance of the affidavit would

be admissible in another form at trial.[3] To hold otherwise and embrace the view that the death of an affiant renders an affidavit a nullity would result in summary judgment where the opposing party had the misfortune to select the one short-lived witness from among the many who may be able to testify to the same thing. We do not believe that Indiana Trial Rule 56(E) should be read so narrowly. As Moore's Federal Practice points out in addressing the identically worded federal rule, Rule 56(e) requires that the affidavit be based on personal knowledge and "set forth *facts* as would be admissible at trial[.]" 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[1][e][i] (3d ed.1997) (emphasis added). The rule does not require that the affidavit itself be admissible. *Id.*

██ In this case, the Dr. Alpern affidavit raised the question as to whether Healthcare Providers' conduct contributed to Denise's pain and was causally connected to her death.[4] Although the affidavit would not be admissible at trial, there is nothing in the record before us suggesting that the substance of the affidavit would not be admissible at trial in another form—most likely, the testimony of another expert witness. As such, the affidavit may properly be considered in opposition to Healthcare Providers' motion for summary judgment.

██ Concerning the Palmers' wrongful death claim, the Wrongful Death Statute provides a cause of action when "the death of one is caused by the wrongful act or omission of another[.]" *Cahoon v. Cummings,* 734 N.E.2d 535, 539 (Ind.2000) (quoting Ind.Code § 34–23–1–1). The purpose of the Wrongful Death Statute is not to compensate for the injury to the decedent but rather to create a cause of action to provide a means by which the decedent's survivors may be compensated for the loss sustained by reason of the death. *Durham ex rel. Estate of Wade v. U–Haul Int'l,* 745 N.E.2d 755, 763–64 (Ind.2001).

██ In support of their motion for summary judgment, Healthcare Providers designated the opinion of the Medical Review Panel. Although the Panel found that Healthcare Providers breached the applicable standard of care, the Panel concluded that Healthcare Providers' conduct "w[as] not a factor in altering the course of the patient's disease or in hastening her death." R. at 35. In opposition to the motion the Palmers designated the affidavit of Dr. Alpern on the issue of causation.

3. Not all federal circuits share the view that the substance rather than the form of the affidavit controls whether the affidavit may be considered at the summary judgment stage of the proceedings. *See, e.g., Wiley v. United States,* 20 F.3d 222, 226 (6th Cir.1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment."); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). Nonetheless, we are persuaded differently.

4. Specifically, according to the affidavit the lump in Denise's breast that she complained of in July 1991 was the same lump that continued to grow and become painful and which was diagnosed as being carcinoma in March

1992. In Dr. Alpern's opinion the failure of Dr. Harper to see Denise between December 13, 1991, and January 10, 1992, and her failure to recommend open biopsy of the left breast after the negative needle biopsy in January 1992 increased Denise's risk of untimely death, was a factor in the resultant damages, altered the course of the patient's disease, and hastened Denise's death. Dr. Alpern further opined that the interpretation of the needle biopsy in January 1992 by Dr. Eisenhut and the Diagnostic Cytology Laboratory and the failure to report that Denise's lesion needed to be excised also increased Denise's risk of untimely death, was a factor in the resultant damages, altered the course of her disease, and hastened her death.

He opined that the conduct of Healthcare Providers "was a factor in the resultant damages, altered the course of the patient's disease, and hastened her death." R. at 128. Because Dr. Alpern's affidavit created a genuine issue of material fact concerning whether Healthcare Providers' conduct caused Denise's death, the trial court erred by granting Healthcare Providers' motion for summary judgment on the Palmers' wrongful death claim.

■ With respect to the survivorship claim, the Survivorship Statute applies when a person receives personal injuries caused by the wrongful act or omission of another but subsequently dies from causes other than those personal injuries. I.C. § 34-9-3-4(a); *Cahoon*, 734 N.E.2d at 544; *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). In such actions, "[t]he personal representative of the decedent who was injured may ... recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived." I.C. § 34-9-3-4(b). The Palmers are seeking damages under this statute for the physical pain and mental anguish that Denise suffered as a result of Healthcare Providers' alleged negligence in failing to diagnose and treat her cancer.[5]

■ As we have already determined, the Dr. Alpern affidavit may properly be considered in opposition to Healthcare Providers' motion for summary judgment. The affidavit specifically provides "that the lump which Denise Palmer complained on July 24, 1991 was the lump which continued to grow and become painful and which was diagnosed as being carcinoma on March 4, 1992." R. at 127. This representation is sufficient to create a genuine issue of material fact as to whether the failure of Healthcare Providers to diagnose and treat an enlarging cancerous lump in Denise's breast caused her to suffer physical pain.

On the issue of mental anguish, the Rule 56 materials the Palmers presented to the trial court included Dennis' affidavit. He explained at some length how and why Denise experienced mental anguish following her diagnoses. Among other things, according to Dennis, Denise felt "mislead into a course of unknowingly allowing her breast cancer to remain untreated," a feeling that stayed with her until her death. R. at 388. Determining whether Denise suffered mental anguish is a purely subjective inquiry for which expert testimony is unnecessary. Dennis' affidavit was sufficient to create a genuine issue of material fact on this point. Because the affidavits of Dennis and Dr. Alpern create a genuine issue of material fact concerning the cause of Denise's mental anguish and physical pain, the trial court erred by granting Healthcare Providers' motion for summary judgment on the Palmers' survivorship claim.

### Conclusion

We reverse the trial court's entry of summary judgment in favor of Healthcare Providers. This cause is remanded.

DICKSON and SULLIVAN, JJ., concur.

SHEPARD, C.J., dissents with separate opinion.

BOEHM, J., dissents with separate opinion in which SHEPARD, C.J. concurs.

---

5. A tortfeasor may be held liable under either the Survivorship Statute or the Wrongful Death Statute, but not both. *Best Homes*, 714 N.E.2d at 705. However, Indiana trial rules expressly permit parties to plead inconsistent, alternative claims. *Id.* at 704 n. 1; *see also* T.R. 8(E).

SHEPARD, Chief Justice, dissenting.

My colleagues have outlined their positions on the issues that divide us, can a party prevail in a summary judgment proceeding by submitting an affidavit from someone who is dead, and I line up with Justice Boehm on the answer to that question.

I write briefly here to say that I think the rule embraced by the majority must inevitably lead to multiple injustices.

To begin with, the rule announced today must surely be available to both sides in a summary judgment proceeding. Trial Rule 56 treats all affidavits in the same way: "Supporting and opposing affidavits shall be made on personal knowledge", and so forth. Even if Rule 56 did not so read, it would be a matter of simple equity that both those who move for summary judgment and those who resist it be treated alike.

Under the facts of the present case, of course, the majority's decision means that the parties and the court will proceed to the trial of a case in which so far as is known now the claimant does not have admissible evidence in support of the elements of the claim. While it seems easy to surmise that the plaintiffs will ultimately be able to find a medical witness that will make this possible, it is the very office of Rule 56 to provide early resolution of whether this is so or not. That is why Rule 56 says that a responding party is not entitled simply to stand on the pleadings.

One can readily identify cases of a different posture in which the application of the majority's rule will not seem as humane as the outcome in this case. Sooner or later, a party whose only witness has died will *obtain* summary judgment even though it is clear that the responding party would have prevailed at trial had he been afforded a trial. Say, the injured plaintiff in an auto crash case who cannot say whether the light was red or green will lose the chance to go to trial against the estate of the other driver because the other driver gave an affidavit saying she had the green light and then died before the matter could go to trial. Or, the seller of goods will prevail against the buyer even though the deliveryman who is the only person who can testify about whether the goods were put on the dock has died since his affidavit. The seller will win on summary judgment even though he would have lost at trial.

There are doubtless other permutations that have not yet come to mind. Suffice it to say that I think it would be simpler, and in the long run more just to more people, simply to say that one cannot seek or resist summary judgment based on the affidavit of someone who has died.

BOEHM, Justice, dissenting.

It is important to understand the sequence of events in this case. The significant ones may be easily summarized. The defendant filed a motion for summary judgment supported by the panel's opinion, admissible in evidence by statute, that there was no causal relationship between the defendant's acts and the plaintiff's injury. The plaintiff responded with an affidavit from a physician that there was causation. The motion was denied on the ground that there was a genuine issue of material fact, namely, whether the defendant caused the plaintiff's injury. So far, so good. The plaintiff's affiant then died. The majority holds, and I agree, that this did not entitle the defendant to summary judgment. As the majority points out, the unavailability of the particular affiant to testify at trial does not establish that there is no genuine issue of fact.

But the majority goes too far, in my view, and suggests that an affidavit may

"raise a material issue of fact on summary judgment if that evidence can be rendered admissible at trial." The majority explains that because somebody else could express the same opinion, the affidavit from the now deceased physician is sufficient. That is not correct in my view and is not supported by most of the cases cited for that proposition.

Trial Rule 56(E) requires that the moving party and the party opposing summary judgment support their factual claims with affidavits that (1) are based on personal knowledge, (2) set forth facts that would be admissible in evidence, and (3) "show affirmatively that the affiant is competent to testify to the matters stated therein."

I agree that the death of an affiant opposing summary judgment does not render the affidavit a nullity so that the moving party is entitled to summary judgment. As the majority notes, there may be many witnesses who can establish the same fact on personal knowledge, and the accident that fate struck down the one chosen to file an affidavit should not, in itself, entitle the opposing party to prevail. The death of the affiant is not insignificant, however. The affidavit no longer meets the requirements of Rule 56(E) because a dead person is not a competent witness. Faced with this situation, the moving party should be required to do exactly what the defendant did in this case—renew the motion, supplemented by proof that the erstwhile affiant is no longer with us. That requires the opposing party to file a new affidavit or concede that the motion no longer can be opposed by competent testimony at trial. Because the plaintiff here failed to oppose the defendant's renewed summary judgment with an affidavit from a competent witness controverting the panel's opinion that there was no causation, the defendant was entitled to summary judgment on the renewed motion.

The authorities cited by the majority, with a single exception, do not support the broad proposition that the majority advances. Judge Posner's opinion in *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir.1994), merely points out that the affidavit itself is not required to be admissible in evidence. That is of course true, but it is not a remarkable proposition. Indeed, almost no affidavits offered in support of or opposing summary judgment motions are themselves admissible. Rather, they are, standing alone, classic hearsay. Although the affidavit need not be itself admissible, it must establish that there is admissible evidence. The passage from *Winskunas* that the majority quotes does not mean that it is sufficient if some other unspecified witness might be able to fill the gap. The court said it is sufficient that the evidence be admissible in some form. This means only that there is no requirement that the affidavit itself be admissible. Indeed, *Winskunas* expressly requires that the "content" of the affidavit, which includes proof that the affiant is a competent witness, must be admissible. The omitted portion of the majority's quotation from *Winskunas* makes this clear. Judge Posner describes as an example of a change of the "form" but not the "content" of an affidavit "substitution of oral testimony for a summary of that testimony in an affidavit...." *Id.* This surely means the testimony of the affiant, not just anyone.

Similarly, the cases cited by Judge Posner support only this narrow point, not the claim that an affidavit from an incompetent witness, or an affidavit reciting what somebody told the affiant, is sufficient because an affidavit from somebody else might be adequate. Rather, it is up to the party seeking to establish the fact to find the "somebody else" and present his or her affidavit. That is precisely what *McMillian v. Johnson*, 88 F.3d 1573, 1584–85 (11th

Cir.1996), and *Treff v. Galetka*, 74 F.3d 191, 196 (10th Cir.1996), cited by the majority, hold. They each reject as inadmissible hearsay affidavits that recite statements told to the affiant.

In *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601 (7th Cir.2000), the affiant died but had been deposed and cross examined as to the affidavit. The court held the affidavit and deposition were properly considered on summary judgment. Only the deposition was needed to establish the facts, and it was clearly admissible under Evidence Rule 804(b). The affidavit was a proper exhibit to the deposition. To the extent the court's language suggests the affidavit was properly considered as a freestanding item in opposition to summary judgment, it is dicta and is simply incorrect in my view. Only *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.*, 998 F.2d 1224, 1234–35 n. 9 (3d Cir.1993), suggests, in a footnote, that the Third Circuit would allow hearsay in an affidavit because another affiant could be produced. The Third Circuit is out of step with the weight of authority on this point, as far as I can tell, and should remain so.

The requirement that an affidavit establish evidence admissible at trial applies equally to parties seeking summary judgment and those who oppose it. Just as it would be improper to seek summary judgment based on an affidavit that says "I wasn't there but Sally told me the light was red," so also is it insufficient to oppose an affidavit from a competent witness with such a filing. An affidavit from the person who told the affiant the reported fact would presumably do the job because that person could testify at trial. But Rule 56 requires an affidavit from that person, who can testify to the fact, not the affiant who cannot. The same problem exists with affidavits from a person who cannot testify at all. An affidavit reciting hearsay told to the affiant is insufficient because, although the reported facts may be true, Rule 56 requires an affidavit setting forth admissible evidence to establish those facts. Similarly, an affidavit from a witness who cannot testify does not do the job because that person cannot establish the same at trial. That is true whether the witness has no personal knowledge, is dead, or cannot testify for any other reason.

In sum, the requirement of the Rule is that the affidavit establish that there is admissible evidence supporting the fact advanced by the party offering the affidavit. Before the affiant died, assuming his expertise was sufficiently shown, his affidavit was not itself admissible, but it established that there was evidence—his opinion to be given in live testimony—that would be admissible at trial. After the death of Dr. Alpern was established by uncontroverted evidence, his affidavit no longer served that purpose because all it proved was that a now incompetent witness would, if still with us, have presented admissible evidence. It failed to establish that there remained admissible evidence establishing causation. The undisputed facts thus established that the defense would prevail at trial on the issue of causation. Under these circumstances summary judgment should be granted.

I believe all of the foregoing is not only consistent with but demanded by the purpose of summary judgment, which is to avoid unnecessary trials. *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993) (noting that the revisions to Trial Rule 56(C) "promote the expeditious resolution of lawsuits and conserve judicial resources . . . ."). If the only evidence on the causation issue at trial will be the panel's opinion, there will be literally no evidence to support a verdict for the plaintiff and a directed verdict will be required. There is no reason for the parties or the taxpayers

to go through the expense and effort of a trial whose result is foreordained. Indeed, the whole purpose of Trial Rule 56 is to flush out claims and defenses that cannot be substantiated at trial by admissible evidence.

I would grant summary judgment in favor of the defendants on their renewed motion for summary judgment.

SHEPARD, C.J., concurs with separate opinion.