**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 16 2012, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RONALD E. WELDY**
Weldy & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**SCOTT S. MORRISSON**
Krieg DeVault LLP
Carmel, Indiana

**LINDA J. COOLEY**
Krieg DeVault LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LISA MARTIN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1112-PL-1117 |
| | ) | |
| AMERICAN SENIOR COMMUNITIES, LLC, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1012-PL-53925

**May 16, 2012**

**MEMORANDUM DECISION—NOT FOR PUBLICATION**

**BRADFORD, Judge**.

In this action seeking reimbursement for paid vacation time, Appellant-Plaintiff Lisa Martin challenges the trial court's grant of summary judgment in favor of her former employer, Appellee-Defendant American Senior Communities, LLC ("ASC"). Upon appeal Martin challenges the trial court's consideration of certain designated evidence in awarding ASC summary judgment. In addition, both parties contend that summary judgment in their favor is warranted. Concluding that the trial court erred in considering certain designated evidence and that genuine issues of material fact exist, we reverse the trial court's grant of summary judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Martin became employed by ASC on June 30, 2007, and worked at its Clearwater Commons facility in Indianapolis. Martin worked as a home health aide at an hourly rate of $10.50 and earned vacation time. As of May 13, 2008, Martin had accrued unused vacation time of 69.02 hours.

On May 13, 2008, Martin was terminated from ASC. ASC's basis for terminating Martin was that she had failed to follow appropriate standards of resident care. Martin received a letter to this effect dated May 13, 2008. Alisa Caldwell, Martin's supervisor, claimed that Martin had violated these standards of care while attending to resident Mr. F. Turner on April 22, 2008. Both Caldwell and a certain Kimberlie Brooks, who was a nurse at Clearwater Commons at the time, were allegedly told by caregiver Kaye Shelton that she

2

had observed Martin verbally abusing Mr. Turner on that date. Brooks prepared a Care and Concern Form documenting Shelton's observations that day.

This was not Martin's first alleged violation of the standards of care. On December 18, 2007, she received a written warning for failure to follow instructions and the standard of resident care; and on February 26, 2008, she received a second written warning for violating the standard of resident care, specifically with regard to medication errors. Martin also apparently received a final written warning and perhaps two other notices regarding her allegedly inadequate work performance.[1] In two of those instances, including one apparently on May 3, 2008, in which she failed to properly fit a back brace, Martin was alleged to have violated the standard of care, among other violations.

Following her termination, ASC did not pay Martin her accrued vacation time. Martin filed a grievance with ASC which was subsequently denied on the grounds that she was terminated for "blatant disregard for safety or resident care practices that may cause injury or illness to residents, co-workers or self." Appellant's App. p. 69. ASC's employment policy dictates that gross misconduct by an employee subjects the employee to immediate dismissal and loss of vacation pay. "Blatant disregard for safety or resident care practices" constitutes such gross misconduct. Martin does not dispute that, in the event she had committed blatant disregard for safety or resident care practices, she would not be entitled to vacation pay.[2]

---

[1] These notices have illegible or missing dates and one contains the notation that it was never presented to Martin.

[2] An employee's right to vacation pay is not absolute; rather, an employee receives her accrued vacation pay "provided no agreement or published policy exist[s] to the contrary . . . ." *Ind. Heart Assocs., P.C. v. Bahamonde*, 714 N.E.2d 309, 311-12 (Ind. Ct. App. 1999) (internal quotation omitted).

On December 10, 2010, Martin filed an action against ASC seeking payment of her vacation wages, plus interest, costs, and fees, pursuant to the Wage Claims Statute. On May 23, 2011, Martin moved for summary judgment. Martin's designated evidence included portions of a deposition in which she testified that, although she did not remember the events of April 22, 2008 in particular, the allegations of abuse were not consistent with her conduct.

On June 24, 2011, ASC filed a response and cross-motion for summary judgment, designating evidence indicating that Martin had been terminated for gross misconduct and therefore was not entitled to her unused vacation pay per ASC policy. ASC's designated evidence included, *inter alia*, affidavits from Caldwell and Brooks averring to Shelton's report of Martin's verbal abuse of Mr. Turner on April 22, 2008; an email from Caldwell to her supervisors detailing Shelton's report; the Care and Concern Form filled out by Brooks relaying Shelton's account; and excerpts from Martin's deposition demonstrating that she did not remember the events of April 22, 2008.

Martin moved to strike those parts of Caldwell's and Brooks's affidavits relaying Shelton's report of the alleged abuse; Caldwell's email and averment that she had prepared the email in the regular course of business; Brooks's averment that she had completed the Care and Concern Form in the regular course of business, that she had done so in response to Shelton's report, and that she currently had insufficient recollection of its contents; and the Care and Concern Form itself.

On July 18, 2011, the trial court initially denied Martin's motion to strike and on July 28, 2011, granted summary judgment in favor of ASC. Martin filed motions to reconsider

4

and to correct errors, claiming in her motion to correct errors that the trial court had issued summary judgment prematurely, before she had a chance to respond to ASC's cross-motion. On November 2, 2011, the trial court modified its prior ruling by granting, in part, Martin's motion to strike evidence, including Caldwell's affidavit and email. The trial court again denied the motion with respect to Brooks's affidavit and her Care and Concern Form, and it granted summary judgment in favor of ASC. This appeal follows.

## DISCUSSION AND DECISION

Upon appeal, Martin claims that the trial court abused its discretion by considering the Brooks affidavit and Care and Concern Form, which she contends qualify as inadmissible hearsay. Brooks also challenges the trial court's grant of summary judgment.

On appeal, the standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind. 2003) (citing Ind. Trial R. 56(C)). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.* Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.*

5

## I.	Motion to Strike

## A.	Brooks Affidavit

Indiana Trial Rule 56(E) provides in pertinent part that "[s]upporting and opposing affidavits *shall be made on personal knowledge*, shall set forth such facts as would be *admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Emphases supplied).	Under certain circumstances, "an affidavit that would be inadmissible at trial may be considered at the summary judgment stage of the proceedings if the substance of the affidavit would be admissible in another form at trial." *Reeder*, 788 N.E.2d at 1241-42 (permitting consideration of affidavit where affiant had died). These circumstances do not include instances where the affidavit is not based upon personal knowledge. *See id.* (emphasizing importance of personal knowledge requirement).

Inadmissible hearsay contained in an affidavit may not be considered in ruling on a summary judgment motion. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 5 (Ind. 2010) (citing *Breining v. Harkness*, 872 N.E.2d 155, 158 (Ind. Ct. App. 2007) (affirming trial court's striking portions of affidavit not based upon personal knowledge)).	Indiana Evidence Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pursuant to Indiana Evidence Rule 802, unless an exception applies, hearsay is inadmissible.

In denying portions of Martin's motion to strike, the trial court considered Brooks's averments relaying Shelton's report of the April 22, 2008 incident. Paragraph 3 of Brooks's

6

affidavit specifically states as follows: "In April 2008, caregiver Kaye Shelton reported to me that on April 22, 2008 Plaintiff Lisa Martin was verbally abusing resident Mr. F. Turner, including that Plaintiff was yelling at Mr. Turner and talking to him like he was a child." Appellant's App. p. 90.

ASC now argues that the averments were merely useful to explain why Brooks took the action she did in filling out the Care and Concern Form. But Brooks's act of filling out the form ultimately is only relevant to show why ASC took the action it did in firing Martin. And ASC's reasons for taking the action it did require an evaluation of the underlying truth of Shelton's statements, which lies at the heart of the summary judgment motion. If Shelton's statements are true, they establish that Martin committed an act disqualifying her from vacation pay, an essential component of the summary judgment. In seeking and receiving summary judgment, therefore, ASC and the trial court would have had to rely upon the truthfulness of Shelton's report. Our only account of this report comes from Brooks's averments, which were not based upon Brooks's own personal knowledge. The second-hand nature of these averments makes them classic inadmissible hearsay, and the trial court erred in considering them. *See* T.R. 56(E). To the extent the trial court awarded summary judgment based on this evidence, we must conclude it was error.[3]

---

[3] To the extent Paragraph 4 of Brooks's affidavit references an "incident" on April 22, 2008 about which she has no personal knowledge, the fact of the incident is similarly inadmissible. Otherwise Paragraphs 4 and 5,which merely indicate that Brooks completed a form in the normal course of her business duties about which she currently has no personal knowledge, are not inadmissible.

## B.     Care and Concern Form

### 1.     Indiana Evidence Rule 803(6)

The trial court considered the Care and Concern Form on the basis that it was a business record, recorded during the normal course of business. Indiana Evidence Rule 803(6) permits, as an exception to hearsay, records of regularly conducted business activity. Indiana courts applying Rule 803(6) have held that a person who records the information in the regular course of business must also have personal knowledge of the information recorded in order to make it reliable. *Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997). An exhibit admitted pursuant to Rule 803(6) must be part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of entry. *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006).

The Care and Concern Form, which was referenced by and attached to the Brooks affidavit, was relied upon by ASC as further documentation of the April 22 events justifying its refusal to award Martin her vacation pay. While the document may have been created by Brooks and recorded during the normal course of business, its substance was not based upon her personal knowledge. The form is somewhat difficult to read, but appears to state as follows:

> On April 22, 2008 it was voiced by Mr. [] Turner's companion that Lisa Martin HHA was verbally abusing Mr. Turner as witnessed by his companion. The companion stated "She was yelling [] him and talking to him like he was a child" and she also [] "I told her not to talk to him like that he is not a child." "She did not realize I was in the room when she was doing it."

Appellant's App. p. 92.

The contents of this form demonstrate that Brooks did not have personal knowledge of the events of April 22 as she recorded them. Yet the above authority requires that the transactions represented within a business record be based upon the personal knowledge of the individual recording those transactions. *See Stahl*, 686 N.E.2d at 92; *Rolland*, 851 N.E.2d at 1045. Accordingly, Rule 803(6) is not a basis upon which the form may be considered.

## 2. Indiana Evidence Rule 803(2)

ASC additionally points to the fact that Martin was alleged to have been "yelling" and claims this places the contents of the form within the "excited utterance" exception to the general ban on hearsay. Pursuant to Indiana Evidence Rule 803(2), an exited utterance qualifies as an exception to hearsay. An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The operative declarant here is Shelton, not Martin; it is Shelton's report of the abuse, and her accompanying identification of Martin as the abuser, which ASC seeks to introduce for purposes of establishing its case against Martin. ASC does not claim that Shelton was making an excited utterance at the time she reported the events in question to Brooks, only that Shelton observed Martin making some excited utterances. Because it is the reliability of *Shelton's* declaration which is at issue, any additional excited statements within her declaration do not qualify it for the excited utterance exception. This argument is unavailing.

9

### 3. Indiana Evidence Rule 801(d)(2)

ASC further relies upon Indiana Evidence Rule 801(d)(2) in justifying the admission of the form. Rule 801(d)(2) excludes from the hearsay definition a statement "offered against a party" which is "the party's own statement[.]" Again, the operative declarant here is Shelton, not Martin. Shelton's account of Martin's statements, therefore, does not fall within this exception.

### 4. Indiana Evidence Rule 102

ASC lastly points to Indiana Evidence Rule 102, which the trial court also relied upon in admitting the disputed evidence. Rule 102 provides as follows with respect to the rules of evidence in general: "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

Given the fairly fundamental hearsay principles at issue in this case, we are unconvinced that Rule 102 would serve to admit the disputed evidence when Rule 802 specifically dictates its exclusion. Accordingly, we must conclude that the Care and Concern Form was not properly considered for its substantive content.

## II. Summary Judgment

### A. Favoring ASC

ASC claims that, given Martin's other violations of the standards of care, any one of which would justify termination and denial of vacation benefits, it is entitled to summary

judgment even without the disputed evidence. Martin claims in response that she was terminated for the April 22 incident alone and that the prior incidents, even if they did occur, cannot serve as *post hoc* justification for her denial of benefits.

Part of ASC's own designated evidence is a May 13, 2008, Notice of Involuntary Termination of Employment form indicating the following circumstances of termination: "Following review of *a complaint* of failure to follow appropriate standards of resident care, termination is necessary." Appellant's App. p. 86 (emphasis supplied). Given the singular nature of this stated basis for termination, we cannot accept ASC's claim that the record lacks a material factual dispute as to whether Martin was also terminated for her prior violations. Accordingly, we decline to affirm the trial court's grant of summary judgment on this ground.

### B.     Favoring Martin

Martin argues that without the Brooks affidavit or Care and Concern Form establishing the existence of the April 22, 2008 incident, ASC lacks evidence demonstrating that she was terminated on grounds justifying the denial of her vacation pay. Martin does not dispute that an employee may forfeit her right to accrued vacation pay if her employer has a policy establishing forfeiture of vacation pay when termination occurs on certain grounds, and the employee is terminated on those grounds. *See Ind. Heart Assocs, P.C. v. Bahamonde*, 714 N.E.2d 309, 311-12 (Ind. Cr. App. 1999).

While the specifics of the April 22, 2008 incident are not proper designated evidence, there is ample designated evidence demonstrating a genuine issue of material fact as to

11

whether Martin was terminated on grounds justifying the denial of vacation pay. ASC's evidence indicates that it had a policy establishing that an employee forfeited vacation pay when terminated for "gross misconduct"; that "gross misconduct" included blatant disregard for safety or resident care practices; that ASC's basis for terminating Martin was her alleged conduct violating the standards of resident care; and that ASC viewed Martin's conduct as blatant disregard for safety or resident care practices and denied her vacation pay on that ground. For her part, Martin denies the occurrence of the alleged events leading to her termination. Given the undisputed existence of ASC's termination policy, and the parties' disagreement over the events alleged by ASC to fall within the terms of that policy, a genuine issue of material fact clearly remains. *See id.* at 312-13 (finding issue of material fact where employer had policy justifying denial of vacation pay but the parties disputed the facts regarding whether policy had been violated). Accordingly, we cannot find that summary judgment in favor of Martin is warranted.

### III.    Conclusion

Having concluded that the trial court improperly considered certain evidence in awarding summary judgment in favor of ASC, and that genuine issues of material fact are present in the record, we reverse the trial court's grant of summary judgment in favor of ASC and remand for further proceedings.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

VAIDIK, J., and CRONE, J., concur.