# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**ROBERT E. STOCHEL**
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**CARL A. GRECI**
**ANGELA K. HALL**
**RYAN G. MILLIGAN**
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PHILLIP A. COLLINS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1111-MF-600 |
| | ) | |
| HSBC BANK USA, National Association, as | ) | |
| TRUSTEE FOR HOME EQUITY LOAN | ) | |
| TRUST SERIES ACT 2004-HE3, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John R. Pera, Judge
Cause No. 45D10-0802-MF-95

**September 11, 2012**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF CASE

Phillip A. Collins ("Collins") appeals the trial court's grant of summary judgment in favor of HSBC Bank USA, N.A., As Trustee for Home Equity Loan Trust Series Act 2004-HE3 ("HSBC").

We affirm.

## ISSUES

1.   Whether the trial court erred in not concluding that there was a genuine issue of material fact regarding HSBC's status as the holder and/or owner of the note in a mortgage foreclosure action.

2.   Whether the trial court erred in denying Collins' request to conduct additional discovery regarding HSBC's status as the holder and/or owner of the note.

3.   Whether the trial court erred in granting summary judgment on counterclaims regarding the acts of HSBC's agent.

## FACTS

On or about August 27, 2004, Collins executed and delivered to WMC Mortgage Company ("WMC") an adjustable rate note in the original principal sum of $201,400.00, evidencing a loan in that sum for the purchase of real estate and improvements. On the same day, in order to secure repayment of the sums under the note, Collins executed a mortgage, wherein Mortgage Electronic Registration Systems, Inc., ("MERS") as nominee for WMC, was granted a security interest in the real estate.[1]

---

[1] MERS "operates a computer database designed to track servicing and ownership rights of mortgage loans anywhere in the United States. Originators and secondary market players pay membership dues and

In December 2004, America's Service Company ("ASC") began servicing the loan under the terms of the original loan documents. Collins remitted his payments under the loan to ASC and communicated with ASC regarding issues related to the loan. Under the terms of the loan, mortgage payments were due on the first of each month, with a fifteen-day grace period after which ASC assessed a late fee. Under the terms of the loan, if Collins missed a payment, his next payment was applied to the principal and interest for the missed month.

In November 2006, Collins experienced financial difficulties, so he contacted ASC to request that his loan payments be restructured. ASC agreed to enter into a temporary forbearance agreement, dated November 1, 2006. This agreement changed the payment due date to the 15th day of each month and allowed Collins to spread his missed October 2006 payment over equal installments through July 2007, during which time the holder of the loan would forbear from exercising its contractual right to accelerate the total amount of the loan. The agreement provided, however, that all of the provisions of the note and the mortgage would remain in effect unless stated otherwise and that credit bureau reporting would continue during the agreement's term. With reference to credit bureau reporting, the agreement stated that the "contractual due date of your loan will continue

per-transaction fees to MERS in exchange for the right to use and access MERS records." Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 University of Cincinnati L. Rev. 1359, 1361 (2010).

to be reported to the credit bureaus on a monthly basis. While this Agreement is in effect, there may be a special notation: 'Paying under a partial payment Agreement.'" (Collins' App. 263).

On April 1, 2007, ASC agreed to enter into a second forbearance agreement. This agreement changed the payment due date to the 27th day of each month. The agreement did not alter ASC's right to impose late fees and make credit reports.

In or around September 2007, Collins stopped making payments on the loan. Collins was provided with a notice of default and with notice of intent to accelerate the indebtedness pursuant to the loan. Thereafter, HSBC, as holder and/or owner of the note, filed a foreclosure complaint.

The trial court entered summary judgment for HSBC on its foreclosure complaint and on Collins' counterclaims. This appeal followed.

## DECISION

1. HSBC's Status as Holder of the Note

Collins challenges the trial court's grant of HSBC's summary judgment motion. The standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind. 2003) (citing Indiana Trial Rule 56(C)). The moving party bears the burden of designating evidence showing that no

4

genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. *Pfenning v. Lineman*, 947 N.E.2d 392, 396 (Ind. 2011). Once met, the burden shifts to the non-movant to specifically designate facts showing that there is no genuine issue for trial. *Id.* at 397. All facts and reasonable inferences drawn from those facts are construed in favor of the non-movant. *Reeder*, 788 N.E.2d at 1240. Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.*

In its order granting summary judgment, the trial court found that HSBC was the current holder of the note and mortgage and that HSBC was entitled to a judgment on the note and to foreclose on the mortgage. Collins contends that the trial court erred in granting HSBC's motion for summary judgment because two affidavits filed by HSBC in support of its motion created a material issue of fact. Specifically, Collins claims that the affidavits "compete" because both affidavits state that the attached copy of the note is "true and accurate," when one of the attached copies of the note contains WMC's endorsement to HSBC and the other does not. Collins' Br. at 11-12.

In the first affidavit, ASC foreclosure litigation specialist Jaime Walls avers that HSBC is the "present owner and holder of the [note, mortgage, and assignment]." (Collins' App. 183). Walls also avers that the note, mortgage, and assignment of the mortgage attached to HSBC's complaint are "true and accurate copies of documents

5

evidencing the indebtedness of Collins to HSBC and securing that indebtedness . . . ." *Id.* The note attached to the complaint is not endorsed by WMC.

Because the note attached to the complaint was not endorsed, Collins requested that the trial court deny HSBC's motion for summary judgment, arguing that HSBC had failed to show that it was the holder and/or owner of the WMC note. In a second, supplemental affidavit, ASC default litigation specialist Robert Williams avers that he "took over handling of this matter from . . . Jaime Walls." (Collin's App. 305). Williams also avers that HSBC is "the present holder and owner of the Collins' Note and Mortgage" and that ASC, "as servicer of Collins' Mortgage Loan, is entitled to enforce the Note and Mortgage on HSBC's behalf." (Collin's App. 305-06). Attached to Williams' affidavit is a copy of the original note, which includes an endorsement by WMC to HSBC. This endorsement reads as follows: "Pay to the order of HSBC Bank USA, National Association as Trustee, in trust for the registered holders of ACE [sic] Securities Corp. Home Equity Loan Trust, Series 2004-HE3, [illegible] Backed Pass-Through Certificates." (Collins' App. 312).

Collins maintains that the trial court had to weigh the evidence to conclude that HSBC is the owner of the note. Our review of the summary judgment hearing discloses that HSBC presented the original note with Collins' inked signature and that the note contained the endorsement from WMC to HSBC. The endorsement evidences HSBC's right to enforce the note. *See* Ind. Code § 26-1-3.1-204(c) ("For the purpose of

6

determining whether the transferee of an instrument is a holder, an endorsement that transfers a security interest in the instrument is effective as an unqualified endorsement of the instrument); I.C. § 26-1-3.1-301(1) (defining the holder of the instrument as a "[p]erson entitled to enforce" an instrument); I.C. § 26-1-1-201(A) (defining a "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person if the identified person is in possession of the instrument"). There is only one inference to be drawn here: HSBC is the holder and owner of the note, and as such, it is entitled to enforce the note. Accordingly, the trial court did not err in granting summary judgment on this issue.

2.    Denial of Motion to Conduct Additional Discovery

Collins contends that the trial court erred in denying its motion to conduct additional discovery into the ownership of the note. The decision to grant a continuance of summary judgment deadlines is committed to the sound discretion of the trial court. *Logan v. Royer*, 848 N.E.2d 1157, 1160 (Ind. Ct. App. 2006) (citing Ind. Trial Rule 56(I)). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Our supreme court has stated that it is generally improper for a trial court to grant summary judgment "while reasonable discovery requests that bear on issues material to the motion are still pending." *Quiring v. GEICO General Ins. Co.*, 953 N.E.2d 119, 132-33 (Ind. Ct. App. 2011). However, in order to establish that a trial court abused its discretion in denying a

7

motion for continuance, "the appealing party must show both that good cause existed to grant the motion and that it was prejudiced by the denial." *Id*. at 133.

Here, Collins initially refers to two potential areas of additional discovery: (1) the validity of the assignment from WMC to HSBC and (2) "the facts and circumstances involved in HSBC acting as trustee for an entity known as 'Home Equity Loan Trust Series ACT 2004-HE3.'" Collins' Br. at 15. We conclude that neither inquiry could lead to the development of a material issue of fact. As discussed above, HSBC, as the holder of the endorsed note, is entitled to enforce the note under Indiana Code sections 26-1-3.1-204(c), 26-1-3.1-301(1), and 26-1-1-201(A). Also, the existence of the trust could not have come as a surprise to Collins, as the complaint caption and first line of the complaint specifically state that the plaintiff is "HSBC Bank USA, National Association, As Trustee For Home Equity Loan Trust Series ACE [sic] 2004-HE3." (Collins' App. 22).

Collins also refers to "nationwide litigation, state and federal investigations, and thousands of articles and conclusions reached by courts that the process and procedure of assignment and transfer of mortgage notes is rife with fraud, disingenuous affidavits and inappropriate conduct by mortgage companies and their loan servicers." Collins' Br. at 15. While Collins' allegation may or may not be true, it does not address the designated facts of this case. The evidence shows not only that HSBC is in possession of the *original* note but also that the original note was endorsed to HSBC. There exists no

better evidence to establish that HSBC is the present holder of the note entitled to enforce the note under Indiana law. Under these circumstances, we cannot conclude that Collins showed either good cause to grant the motion for additional discovery or that he was prejudiced by the denial. Accordingly, we conclude that the trial court's denial of Collins' motion was not erroneous.

3.  Counterclaims

Collins contends that the trial court erred in granting summary judgment on his counterclaims against HSBC. In these counterclaims, Collins contends that ASC breached its contractual duties when it continued to charge late fees and to make negative credit reports after the parties entered into the forbearance agreements. Collins also contends that ASC violated a provision of the Indiana Home Loan Practices Act ("IHLPA"), Indiana Code section 24-9-2-7.[2] HSBC's liability under the counterclaims is based on Collins' contention that HSBC, as the principal, is liable for the wrongful conduct of ASC as HSBC's agent.

In granting summary judgment to HSBC on Collins' counterclaims, the trial court entered findings of fact and conclusions of law. The trial court recognized that under the counterclaims, HSBC's alleged liability is derivative of ASC's liability, and the trial court found the following:

---

[2] This section of the IHLPA defines a prohibited "[d]eceptive act" as one where "an act or practice as part of a consumer credit mortgage transaction involving real property located in Indiana in which a person at the time of the transaction knowingly or intentionally (1) makes a material misrepresentation; or (2) conceals material information regarding the terms or conditions of the transaction."

There is no genuine issue of material fact or law with respect to Collins' Counterclaims against HSBC, as set forth in the briefs and accompanying designations, and also as set forth more fully in the opinions in the companion case filed against HSBC's servicer [ASC], *Collins v. America's Servicing Co.*, Cause No. 2:08-CV-0122 RM, alleging the same claims and same facts against ASC as against HSBC, wherein Judge Robert L. Miller, Jr., of the United States District Court for the Northern District of Indiana, granted summary judgment in favor of ASC and against Collins and the Seventh Circuit recently affirmed Judge Miller's decision in *Collins v. America's Servicing Co.*, 625 F.3d 711 (7th Cir. 2011).

(Collins' App. 18).[3]

On appeal and during the summary judgment proceedings below, HSBC contended that the doctrine of collateral estoppel is applicable under the circumstances of this case.[4] Under Indiana law, collateral estoppel or "issue preclusion" bars a party from relitigating any fact or issue that it necessarily adjudicated in a former suit. *Sullivan v. American Cas. Co. of Reading, Pa. et al.*, 605 N.E.2d 134, 137 (Ind. 1992). Thus, collateral estoppel does not require previous litigation of the same claims. Rather, a party's adjudication of an issue will be conclusive in later actions where (a) he had a full and fair opportunity to litigate the issue and (b) the use of collateral estoppel would not otherwise be unfair. *Id*. at 138. Moreover, we recognize the use of "defensive" collateral estoppel to promote judicial economy by foreclosing a plaintiff from asserting a claim

---

[3] Findings are not required in the summary judgment context, and although they are not binding on this court, they offer valuable insight into the trial court's rationale and facilitate our review. *Golitko v. Ind. Dep't of Corr.*, 712 N.E.2d 13, 15 (Ind. Ct. App. 1999), *trans. denied.*

[4] Collins contested this contention during the summary judgment proceedings, but he has abandoned his opposition on appeal.

previously litigated and lost against another defendant. *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167-68 (Ind. 1996).

Here, as noted above, Collins' counterclaims against HSBC solely derive from HSBC's purported liability for the alleged wrongdoing of ASC, HSBC's agent. Our comparison of the federal opinions granting and affirming summary judgment against Collins and in favor of ASC on breach of contract and deceptive acts under the IHLPA to the counterclaims raised in this suit against HSBC discloses that Collins is attempting to relitigate its claims against ASC. Indeed, the federal opinions exactly track the allegations made in the present case, albeit without reference to HSBC.

Under the circumstances of this case, where Collins does not contest the application of the collateral estoppel doctrine, has not shown an absence of a full and fair opportunity to litigate the issue in the chosen federal court system, and has not shown how the use of estoppel is unfair, we conclude that he is estopped from asserting claims previously lost and litigated.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.

11