

FILED

Jun 05 2015, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| Adam Lenkowsky | L. Alan Whaley |
| Roberts & Bishop | Stephen E. Reynolds |
| Indianapolis, Indiana | Ice Miller LLP |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bertram A. Graves, M.D., | June 5, 2015 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 49A05-1412-PL-560 |
| v. | Appeal from the Marion Superior Court |
| | The Honorable Heather A. Welch, Judge |
| Indiana University Health, f/k/a Clarian Health Partners, Inc., Richard Kovacs, M.D., and Edward Ross, M.D., | |
| | Trial Court Cause No. 49D12-1009-PL-39308-001 |
| *Appellees-Defendants* | |

**Bradford, Judge.**

# Case Summary

[1] On March 7, 2012, Appellant-Plaintiff Dr. Bertram A. Graves, M.D. filed a

second amended complaint against Appellees-Defendants Indiana University

Health, f/k/a Clarian Health Partners, Inc., Dr. Richard Kovacs, M.D., and Dr. Edward Ross, M.D. (collectively, "the Appellees"). In the second amended complaint, Dr. Graves raised claims of breach of contract, violation of his civil rights, and intentional infliction of emotional distress. The Appellees subsequently filed for summary judgment. Dr. Graves then filed a motion requesting the trial court to compel the Appellees to respond to certain discovery requests. He also filed an amended affidavit which stated his opposition to the Appellees' motions for summary judgment. The Appellees subsequently sought to strike certain portions of Dr. Graves's amended affidavit.

[2] On September 30, 2014, the trial court denied Dr. Graves's motion to compel. The trial court also subsequently denied Dr. Graves's motion to reconsider the denial of his motion to compel. On November 10, 2014, the trial court granted the Appellees' motion to strike and their motion for summary judgment.

[3] On appeal, Dr. Graves contends that the trial court abused its discretion in denying his motion to compel the IU Health to comply with certain discovery requests and in granting IU Health's motion to strike portions of Dr. Graves's amended affidavit. Dr. Graves also contends that the trial court erred in granting summary judgment in favor of the Appellees. Finding no abuse of discretion or error by the trial court, we affirm.

# Facts and Procedural History

[4] Initially, we note that this is the second time that the instant matter comes before this court on appeal. The underlying facts, as set-forth in our opinion on the parties' first appeal, are as follows:

> Dr. Graves is a cardiologist who worked for Clarian Health Partners ("Clarian"), which later became known as Indiana University Health ("IU Health"), from 1992 through August 1, 2009.[1] On that date, [IU Health] revoked his cardiology privileges. Dr. Graves contends that Drs. Kovacs and Ross played a role in the revocation of his privileges, by providing false information to peer review committees and improperly reviewing allegations against Dr. Graves.
>
> On September 7, 2010, Indianapolis MOB, LLC ("MOB"), which is a corporate landlord, sued Dr. Graves for breaching his lease of office space by failing to pay rent. Dr. Graves, in turn, filed a third-party complaint against [IU Health] on November 30, 2010, alleging breach of contract when it did not renew his cardiology privileges, and alleging a substantial loss of income and the inability to pay his rent to MOB. Dr. Graves filed his first amended third-party complaint on December 27, 2010, to attach a copy of his contract with [IU Health].
>
> On January 27, 2011, the trial court granted MOB's motion to sever the third-party complaint from its lawsuit against Dr. Graves. After over a year of delay regarding how the parties would proceed, on March 7, 2012, Dr. Graves filed a "Second Amended Complaint" against Clarian/IU Health under a separate cause number from the original MOB lawsuit. App. p. 116. This complaint for the first time named Drs. Kovacs and Ross as defendants. Under a caption heading that Dr. Graves labeled as "Breach of Contract," he alleged that his employment by [IU Health] was governed by certain bylaws, a code of conduct policy, a peer review policy, and a corrective action policy. *Id.* at 117. Dr. Graves further alleged that, in 1995, his cardiology privileges were "summarily suspended" under the orchestration of Dr. Ross, using false allegations against Dr. Graves. *Id.* Dr. Graves also

---

[1] Throughout this memorandum decision, we will refer to Indiana University Health, f/k/a Clarian Health Partners as IU Health.

alleged that, in 2006 or 2007, Dr. Ross refused to assist Dr. Graves in having his privileges restored. As for Dr. Kovacs, Dr. Graves alleged that he "maliciously and in bad faith" reviewed allegations made against Dr. Graves during peer reviews of Dr. Graves and that he was "instrumental in the elimination" of Dr. Graves's privileges. *Id.* at 118. Finally, Dr. Graves alleged [IU Health] breached its contract with him by eliminating his privileges without cause and without adequate notice, and also that it breached various policies related to termination of his privileges.

On September 6, 2012, Drs. Kovacs and Ross filed a motion for judgment on the pleadings. The sole argument in the motion was that Dr. Graves had failed to state any claim against them for breach of contract because they were not party to any contract with Dr. Graves. In response, Dr. Graves asserted that the facts alleged in the second amended complaint sufficiently stated a cause of action against Drs. Kovacs and Ross for tortious interference with a contract, namely between Dr. Graves and [IU Health]. On November 5, 2012, Drs. Kovacs and Ross filed a response to this assertion, arguing that any claim for tortious interference with a contract was barred by the two-year statute of limitations for such a claim. Dr. Graves did not have a chance to respond to this statute of limitations argument because the trial court granted the motion for judgment on the pleadings on the same day that it was filed, November 5, 2012. The trial court's order mentioned only Dr. Graves's alleged failure to state a claim and not the statute of limitations argument. On December 6, 2012, the trial court denied Dr. Graves's motion to correct error. It also denied Dr. Graves's motion to amend his complaint to more clearly state a claim against Drs. Kovacs and Ross for tortious interference with a contract.

*Graves v. Kovacs*, 990 N.E.2d 972, 974-75 (Ind. Ct. App. 2013) (footnote omitted).

On appeal, we concluded that Dr. Graves was not given an adequate opportunity before the trial court to address the statute of limitations issue. *Id.* at 978. We therefore reversed the trial court's order granting judgment on the pleadings in favor of Drs. Kovacs and Ross without offering an opinion on the merits of the

statute of limitations issue, and remanded the matter to the trial court for further proceedings. *Id.*

[5] On remand, the Appellees filed for summary judgment. On September 12, 2014, Dr. Graves filed a motion to compel the Appellees to respond to certain discovery requests. On September 26, 2014, Dr. Graves submitted an amended affidavit in opposition to the Appellees' motions for summary judgment. The Appellees subsequently sought to strike certain portions of Dr. Graves's amended affidavit.

[6] On September 30, 2014, the trial court denied Dr. Graves's motion to compel. The trial court also subsequently denied Dr. Graves's motion to reconsider the denial of his motion to compel. On November 10, 2014, the trial court granted the Appellees' motion to strike and their motion for summary judgment. Specifically, the trial court determined that the Appellees were protected by peer-review immunity, Dr. Graves had not established discrimination, and the claims against Drs. Ross and Kovacs were time-barred. This appeal follows.

# Discussion and Decision

[7] On appeal, Dr. Graves contends that the trial court abused its discretion in denying his motion to compel IU Health to comply with certain discovery requests, abused its discretion in granting IU Health's motion to strike portions of Dr. Graves's amended affidavit, and erred in granting summary judgment in favor of the Appellees.

# I. Denial of Dr. Graves's Motion to Compel

[8] Dr. Graves contends that the trial court abused its discretion in denying his motion to compel IU Health to comply with certain discovery requests. Upon review, we review a challenge to a trial court's discovery order for an abuse of discretion. *See State v. Int'l Bus. Machines Corp.*, 964 N.E.2d 206, 209 (Ind. 2012). "An abuse of discretion has occurred if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Smith v. Ind. Dep't of Correction*, 871 N.E.2d 975, 987 (Ind. Ct. App. 2007) (citing *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993)), *trans. denied*.

[9] In September of 2014, Dr. Graves filed a motion requesting the trial court to compel IU Health to respond to certain discovery requests. Specifically, Dr. Graves requested that the trial court order IU Health to "provide documentation that is non-redacted in response to the discovery request." Appellant's App. p. 323. In making this request, Dr. Graves asserted that he could not properly respond to IU Health's motion for summary judgment without "the proper completion of discovery." Appellant's App. p. 324.

[10] IU Health subsequently filed a response in opposition to Dr. Graves's motion to compel. In this response, IU Health outlined the history of the parties' discovery dispute, with the relevant portions reading as follows:

**INTRODUCTION**

After having done nothing to advance his discrimination case against Defendants for nearly a year, Plaintiff has filed a Motion to

Compel raising issues with discovery in a transparent attempt to delay summary judgment. However, the majority of the documents Plaintiff requests have already been produced to him. Defendants have produced over 2,000 pages of documents including medical staff policies, exhibits and transcripts from the Health Care Provider Peer Review proceedings, Plaintiff's medical staff file, Cardiovascular On Call Schedules, documents listing On-Call ECHO Readers, and Heart Station Weekly Reading Schedules for the heart lab that Plaintiff worked in. The remainder of the documents Plaintiff seeks are not relevant nor reasonably calculated to lead to the discovery of admissible evidence, and Defendants properly objected to these requests over a year ago. Plaintiff's Motion to Compel should be denied.

**HISTORY OF DISCOVERY REQUESTS AT-ISSUE**

Plaintiff paints an unclear and incomplete picture of the exchanges between the parties concerning Plaintiff's discovery requests and Defendants' responses. Defendants initially responded to Plaintiff's discovery requests in August 2013 — producing hundreds of pages of documents while objecting to certain requests in seeking "all records" of some doctors for a 17-year period as overly broad, unduly burdensome, vague, and not relevant. After a brief discussion of the discovery dispute in November 2013, Defendants heard nothing from Plaintiff until after filing their Motion for Summary Judgment on the July 15, 2014 deadline for dispositive motions. Following Plaintiff's renewed interest in discovery in late August 2014, Defendants have expeditiously responded to Plaintiff's letters requesting documents, producing over 2,000 pages of documents within 16 days, including documents that had already been produced to Plaintiff's counsel before his withdraw. The following is a chronology of the discovery activity in this case.

On June 21, 2013, Plaintiff served his First Request for Production of Documents. (Ex. A, Plaintiff's First Request for Production of Documents.) After Plaintiff, through counsel, agreed to an initial extension, Defendants responded on August 23, 2013, producing several pages of documents, stating additional documents would be produced upon entry of a protective order, and objecting to some of the requests in their entirety. (Ex. B, Letter from Stephen E.

Reynolds to Adam Lenkowsky, dated July 17, 2013; Ex. C, Letter from Stephen E. Reynolds to Adam Lenkowsky, dated August 23, 2013; Ex. D, Defendants' Response to Plaintiff's First Request for Production of Documents.) After the Court's entry of the Agreed Protective Order, on September 12, 2013, Defendants produced 679 additional pages of documents responsive to Plaintiff's discovery requests. (Ex. E, Letter from Stephen E. Reynolds to Adam Lenkowsky, dated September 12, 2013.)

On November 1, 2013, Plaintiff's counsel sent a Rule 26(F) letter seeking the following: (a) the identities of doctors whose names were redacted from medical records; and (b) documents responsive to Plaintiff's Request Nos. 15-19, which sought "all records" including work schedules of physicians assigned to the ECHO schedule, emergency room, catheter lab, and cardiology consult call between 1992 and 2009. (Ex. F, Letter from Adam Lenkowsky to L. Alan Whaley and Stephen Reynolds, dated November 1, 2013.) In response to the letter, Defendants' counsel called Plaintiff's counsel on November 11, 2013 to obtain clarification as to which unredacted physicians' names were being sought. (Ex. G, Affidavit of Reynolds ¶¶ 3 & 4.) Plaintiff's counsel believed his client was only seeking the names of doctors on the peer review committees — not the treating physicians — but stated he would confirm with his client and confirm that with Defendants. (Ex. G, Affidavit of Reynolds ¶ 5.) After that, Defendants heard nothing from Plaintiff or his then-counsel regarding discovery until just recently. (Ex. G, Affidavit of Reynolds ¶[¶] 6 & 7.)

On August 27, 2014, after being granted an extension of time to respond to Defendants' Motion for Summary Judgment, Defendants' counsel received a letter from Plaintiff, dated August 25, 2014, seeking supplementation of Defendants' discovery responses served over one year ago. (Ex. H, Affidavit of Whaley ¶ 3; Ex. I, Letter from Bertram Graves, M.D. to L. Allen Whaley dated August 25, 2014). That same day, Defendants' counsel responded to Plaintiff, seeking clarification as to the supplemental documents he was seeking and stating that Defendants would respond to his other supplementation requests as quickly as reasonably possible. (Ex. J, Letter from L. Allen Whaley to Bertram Graves, M.D., dated August 27, 2014.) As promised, just a few days later, on September 3, 2014, Defendants' counsel sent a follow-up letter via hand-delivery to Plaintiff addressing his specific discovery requests, offer to deliver or make the additional documents

available for pickup at Ice Miller's offices given that most of the documents are sensitive and confidential, and asking that Plaintiff provide his email address and telephone number to facilitate quicker communication. (Ex. K, Letter from L. Allen Whaley to Bertram Graves, M.D., dated September 3, 2014.) Having received no response from Plaintiff, on September 5[, 2014,] Defendants' counsel mailed Plaintiff another letter advising him that the additional documents were now ready to be delivered to him or picked up by him. (Ex. L, Letter from L. Allen Whaley to Bertram Graves, M.D., dated September 5, 2014.)

On September 10, [2014,] Defendants received a letter from Plaintiff with a long recitation of his position regarding various discovery issues and finally providing his email address and telephone number. (Ex. H, Affidavit of Whaley ¶ 5; Ex. M, Letter from Bertram Graves, M.D. to L. Allen Whaley, dated September 5, 2010.) On September 12, [2014,] Defendants' counsel called Plaintiff's office and sent him an email, asking Plaintiff to contact Defendants' counsel to arrange for delivery of the documents. (Ex. H, Affidavit of Whaley ¶ 6; Ex. N, Email from L. Allen Whaley to Bertram Graves, M.D., Dated September 12, 2014.) Plaintiff did not respond to either of these messages, so Defendants' counsel, on his own initiative, hand-delivered the documents to Plaintiff's office, where they were accepted and signed for by the receptionist. (Ex. H, Affidavit of Whaley ¶ 7; Ex. O, Letter from L. Allen Whaley to Bertram Graves, M.D., dated September 12, 2014; Ex. P, Receipt of Rhonda Graves, dated September 12, 2014.) Despite having received these documents, Plaintiff filed his Motion to Compel on that same date.

Appellant's App. pp. 330-34 (emphases in original, footnotes omitted).

## A. "Complete Medical Records"

[11] In support of his contention that the trial court abused its discretion in denying his motion to compel, Dr. Graves argues that he was entitled to receive the complete medical records upon which any disciplinary actions were based, but that IU Health "simply produced the relevant portions of medical records that

were used in peer review proceedings." Appellant's Br. p. 16. Dr. Graves argues that his request was for "'complete medical records' of the treatment of those patients, not just documents used in peer review proceedings." Appellant's Br. p. 16. Dr. Graves alleges that these documents, which he claims were "clearly relevant," were never produced. Appellant's App. p. 16.

[12] In response, IU Health argues that the trial court acted within is discretion in denying Dr. Graves's motion to compel because Dr. Graves had an opportunity to, and did, obtain and use whatever portions of the medical records that he thought were important while he was responding to the peer review committees' concerns. At that time, as a member of the IU Health medical staff, he had access to the complete medical records of each patient case, and he could, and did, use any or all of those records in his responses to the peer review committees. Later, upon exercising his internal appeal rights, Dr. Graves received whatever medical records that he and IU Health thought were relevant to the hearing. As such, IU Health argues that the trial court correctly determined that IU Health should not be compelled to produce copies of documents, *i.e.*, the complete medical records, which have "already been produced." Appellees' Br. p. 10. IU Health also argues that the trial court correctly determined that it should not be compelled to produce the complete medical records because Dr. Graves "did not demonstrate the relevance of or the need for the portions of the medical records that no one had relied on during the peer review proceedings." Appellees' Br. p. 10.

[13] Upon review, we cannot say that the trial court's denial of Dr. Graves's motion to compel IU Health to produce the complete medical records amounted to an abuse of the trial court's discretion. As such, we conclude that the trial court did not abuse its discretion in this regard.

## B. Redacted Names

[14] Dr. Graves also argues that the trial court abused its discretion in denying his request for the trial court to compel IU Health to produce copies of the medical records that did not redact the physicians' names. In making this argument, Dr. Graves asserts that the physicians listed were not entitled to immunity under Indiana Code section 34-30-15-3[2] because the medical records in question were not documents created for the purpose of the peer review proceedings, but rather were documents created during the ordinary course of treatment of the patients. Dr. Graves also cites to our prior opinion in *Ray v. St. John's Health Care Corp.*, 582 N.E.2d 464, 473 (Ind. Ct. App. 1991). In *Ray*, we concluded that the hospital's claim of privilege was not sufficient to sustain the broad finding that all the documents in question were privileged because it was unclear whether the hospital was motivated primarily by economic or professional service considerations. *Id.*

---

[2] Indiana Code section 34-30-15-3(a) provides that "Information that is otherwise discoverable or admissible from original sources is not immune from discovery or use in any [health care provider peer review committee] proceeding merely because it was presented during proceedings before a peer review committee."

For its part, IU Health argued that Dr. Graves "demonstrated no reason" why the names of the other physicians named in the medical records should have been left unredacted. Appellees' Br. p. 10. In making this argument, IU Health asserted that the trial court acted within its discretion in denying Dr. Graves's motion to compel because (1) it was appropriate to redact the physicians' names to preserve the physicians' confidentiality interests; (2) the medical records were the records of Dr. Graves's patients, and the names of the other physicians would have been known to Dr. Graves because they would have participated in the patients' care with Dr. Graves; and (3) the identities of the other physicians who also treated Dr. Graves's patients had nothing to do with the concerns about the quality of care provided by Dr. Graves that were at issue before the peer review committees. Further, IU Health asserts that to the extent that Dr. Graves claims that he should have received more information because he alleged in his complaint that Dr. Ross "initiated the whole process," Graves has presented no evidence that suggests that the peer review committees had any improper motivation and an unsupported allegation of improper motives does not justify the discovery of irrelevant information. Appellees' Br. p. 11.

Upon review, we cannot say that the trial court's denial of Dr. Graves's motion to compel IU Health to produce unredacted copies of the medical records amounted to an abuse of the trial court's discretion. As was the case in Subsection A, Dr. Graves has failed to establish that the trial court's decision in this regard is clearly against the logic and effect of the facts and circumstances

before the trial court. As such, we conclude that the trial court did not abuse its discretion in this regard.

## II. IU Health's Motion to Strike

[17]   Dr. Graves also contends that the trial court abused its discretion in granting the Appellees' motion to strike certain portions of his amended affidavit.

> The trial court has broad discretion in ruling on the admissibility of evidence. *Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 886 (Ind. Ct. App. 2002). This discretion extends to rulings on motions to strike affidavits on the grounds that they fail to comply with the summary judgment rules. *Id.*
>
> Indiana Trial Rule 56(E) provides in relevant part that affidavits submitted in support of or in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Further, "[s]worn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.* "The requirements of T.R. 56(E) are mandatory—therefore, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits." *Interstate Auction, Inc. v. Cent. Nat'l Ins. Group, Inc.*, 448 N.E.2d 1094, 1101 (Ind. Ct. App. 1983).

*Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005).

[18]   The trial court issued an order striking several paragraphs of Dr. Graves's amended affidavit, finding that the paragraphs in question contained inadmissible hearsay. In reaching this finding, the trial court determined that the statements contained in the paragraphs in question were not based on Dr. Graves's personal knowledge but rather were statements not made by

declarants other than Dr. Graves, *i.e.*, comments made by other individuals either to or in front on Dr. Graves, which were offered by Dr. Graves for the purpose of proving the truth of the matter asserted.

[19]    Dr. Graves argues that the trial court abused its discretion in striking certain portions of his affidavit on hearsay grounds. In support, Dr. Graves cites to the Indiana Supreme Court's opinion in *Reeder v. Harper*, 788 N.E.2d 1236 (Ind. 2003), claiming that the case provides that any affidavit containing hearsay evidence should be considered during summary judgment proceedings so long as the evidence could be presented in an admissible manner at trial. We believe this to be an over-broad reading of the Indiana Supreme Court's holding.

[20]    In *Reeder*, the affidavit in question was an affidavit that was made by a witness who died after creating the affidavit but prior to the summary judgment hearing. The statements contained in the affidavit were based on the now-deceased witness's personal knowledge. In determining that the deceased witness's affidavit could be considered by the trial court during the summary judgment proceedings, the Indiana Supreme Court held as follows:

> In essence, an affidavit speaks from the time it is made. Hence, an affidavit that would be inadmissible at trial may be considered at the summary judgment stage of the proceedings if the substance of the affidavit would be admissible in another form at trial. To hold otherwise and embrace the view that the death of an affiant renders an affidavit a nullity would result in summary judgment where the opposing party had the misfortune to select the one short-lived witness from among the many who may be able to testify to the same thing. We do not believe that Indiana Trial Rule 56(E) should be read so narrowly. As Moore's Federal Practice points out in addressing the

identically worded federal rule, Rule 56(e) requires that the affidavit be based on personal knowledge and "set forth *facts* as would be admissible at trial[.]" 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[1][e][i] (3d ed.1997) (emphasis added). The rule does not require that the affidavit itself be admissible. *Id.*

*Id.* at 1241-42 (footnote omitted).

[21] A plain reading of *Reeder* would seem to suggest that the Indiana Supreme Court's holding did not change the fact that affidavits submitted either in support of or opposition to a motion for summary judgment must be based on personal knowledge. Rather, the Indiana Supreme Court's holding seems to indicate that affidavits must *both* (1) be based on personal knowledge and (2) set forth facts that would be admissible in some form at trial. This reading of *Reeder* is consistent with the mandatory requirements of Indiana Trial Rule 56(E) which explicitly states that "[s]upporting and opposing affidavits *shall* be made on personal knowledge, *shall* set forth such facts as would be admissible in evidence, and *shall* show affirmatively that the affiant is competent to testify to the matters stated therein. (Emphases added). Again, because the requirements of Trial Rule 56(E) are mandatory, "a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits." *Price*, 832 N.E.2d at 1039 (citing *Interstate Auction*, 448 N.E.2d at 1101).

[22] Upon review, we determine that Dr. Graves's affidavit is easily distinguishable from the affidavit of the deceased witness that was presented in *Reeder*. Dr. Graves presented his own affidavit in opposition to the Appellees' motion for

summary judgment. In this affidavit, certain paragraphs presented statements which were derived from various documents or were allegedly made by other individuals either to or in front of Dr. Graves. Dr. Graves then presented these statements in his affidavit for the truth of the matter asserted. Unlike the deceased witness in *Reeder*, Dr. Graves did not have personal knowledge of the truth of the challenged statements. As such, although these statements might have been admissible at trial in some other form, the trial court could not consider them as part of Dr. Graves's affidavit during the summary judgment proceedings because Dr. Graves did not, himself, have personal knowledge of the truth of the matters asserted. We therefore conclude that the trial court did not abuse its discretion in striking the challenged paragraphs of Dr. Graves's affidavit.

[23] The trial court also found that certain other paragraphs should be struck from Dr. Graves's amended affidavit because the paragraphs in question contained statements that were either irrelevant to Dr. Graves's claims or were inappropriate for consideration because the actions referred to therein occurred outside of the applicable statute of limitations. Dr. Graves claims that the trial court abused its discretion in striking certain paragraphs, the contents of which he claims were simply biographical, involved continuing conduct, or demonstrated that he was being treated differently from other IU Health employees. Upon review, we cannot say that the trial court's decision to strike the challenged statements was clearly against the logic and effect of the facts and circumstances before the trial court. Our review of the statements at issue

shows that many of these statements were either previously struck for containing inadmissible hearsay, irrelevant to the claims levied against the Appellees, or allegedly occurred outside of the relevant time frame.

[24] Further, to the extent that some of the stricken paragraphs may have contained statements that could potentially be relevant to Dr. Graves's discrimination claim, one of these statements was properly struck for containing inadmissible hearsay, and the remaining statements reflect only generalized statements regarding the ways in which Dr. Graves believed he was treated differently than other physicians. These generalized statements do not appear to set forth any specific facts as to how his treatment allegedly differed from that of other physicians. Furthermore, to the extent the statements could be characterized as setting forth specific facts in support of his discrimination claim, the statements at issue do not include any indication as to why Dr. Graves was allegedly treated differently from other physicians. Again, upon review, we cannot say that the trial court's decision to strike the challenged statements was clearly against the logic and effect of the facts and circumstances before the trial court. Accordingly, we conclude that the trial court did not abuse its discretion in this regard.

## III. Summary Judgment

[25] Dr. Graves last contends that the trial court erred in granting summary judgment in favor of the Appellees. In raising this contention, Dr. Graves argues that the trial court (1) incorrectly found that the Appellees were entitled

to immunity on the breach of contract, contractual interference, and emotional distress claims; (2) improperly granted summary judgment on the discrimination claim; and (3) improperly found that the claims levied against Drs. Kovacs and Ross were barred by the statute of limitations. For their part, the Appellees contend that the trial court properly granted their motion for summary judgment.

[26] Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *Heritage Dev.*, 773 N.E.2d at 887.

> "On appeal from the denial of a motion for summary judgment, we apply the same standard applicable in the trial court. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We therefore must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. A genuine issue of material fact exists where facts concerning an issue, which would dispose of the litigation are in dispute, or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. If the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo."

*Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 430 (Ind. Ct. App. 2006) (quoting *Bd. of Tr. of Ball State Univ. v. Strain*, 771 N.E.2d 78, 81-82 (Ind. Ct. App. 2002) (internal quotation marks and some citations omitted)).

> A party seeking summary judgment bears the burden to make a *prima facie* showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *American Management, Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind. Ct. App. 1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id*.

*Heritage Dev.*, 773 N.E.2d at 888 (emphasis added). "On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity." *Van Kirk v. Miller*, 869 N.E.2d 534, 540 (Ind. Ct. App. 2007), *trans. denied*. However, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather may affirm the trial court's ruling if it is sustainable on any theory found in the evidence designated to the trial court. *See Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014) (citing *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009)).

# A. Immunity

In challenging the trial court's award of summary judgment in favor of the Appellees, Dr. Graves argues that the trial court erred in determining that the Appellees were entitled to immunity from his breach of contract, contractual interference, and emotional distress claims. For their part, the Appellees argue the following:

> To summarize: defendant IU Health is a professional review body under [the Health Care Quality Improvement Act ("HCQIA")],

conducting peer review activity through committees of its medical staff, and is entitled to immunity under that statute if certain statutory prerequisites are met. Drs. Kovacs and Ross are also immune because they were persons participating with the professional review body in the professional review action that affected Dr. Graves, as outlined in 42 U.S.C. §§ 11111(a)(1) and 11112(a).

Appellee's Br. p. 16. The Appellees argue that because the pertinent statutory prerequisites were met, the Appellees were immune from liability from Dr. Graves's breach of contract, contractual interference, and emotional distress claims. We agree with the Appellees.

### 1. The Health Care Quality Improvement Act ("HCQIA")

[28] The question of whether the Appellees were entitled to immunity is governed by the HCQIA which is codified at 42 U.S.C. sections 11101 through 11152.[3] "Pursuant to 42 U.S.C. § 11111, except with respect to civil rights actions, a professional review body 'shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to' 'professional review actions.'" *W.S.K. v. M.H.S.B.*, 922 N.E.2d 671, 689 (Ind. Ct. App. 2010). The immunity further extends not only to the professional review body, but also to (1) any person acting as a member or staff to the body, (2) any person under a contract or other formal agreement with the body, and

---

[3] Indiana's version of the HCQIA, the Indiana Peer Review Act, is codified at Indiana Code sections 34-30-15-1 through 34-30-15-23. However, our review will be limited to the federal version because Dr. Graves only raises a challenge to the trial court's order based off its application of the federal version of HCQIA, which undisputedly applies in Indiana.

(3) any person who participates with or assists the body with respect to the action. 42 U.S.C.A. § 11111(a)(1).

[29] A "professional review action" is defined as follows:

> [A]n action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.

42 U.S.C.A. § 11151(9). Immunity attaches under the HCQIA when the review action was taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C.A. § 11112(a). "A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence." *Id.* Accordingly, in this case, the burden fell upon Dr. Graves to

show that the Appellees failed to comply with the requirements and are thereby were not entitled to immunity.

## 2. Application of the HCQIA to the Instant Matter

[30]  In awarding summary judgment in favor of the Appellees, the trial court found as follows:

> 10. Under the HCQIA, this Court finds that the [Appellees] are immune from [Dr. Graves's] breach of contract, tortious interference with a contract, and emotional distress claims if IU Health's peer review actions were taken in the reasonable belief that they furthered quality health care, and were based on reasonable investigation and on fair and adequate notice and hearing procedures. There is a statutory presumption that IU Health's peer review actions have met these standards, which [Dr. Graves] must overcome if he is to avoid summary judgment. [W.S.K., 92 N.E.2d at 690].
>
> 11. Based on the designated evidence, there is no doubt that the peer review actions of IU Health, Dr. Kovacs and Dr. Ross fully satisfy the HCQIA's immunity standards. First, the actions were meant to further quality health care. The designation of evidence, recommendations to the Credentials Committee and the Medical Staff Executive Committee, the deliberations of those committees and their meeting minutes, the notice letters to [Dr. Graves] which describe the committees' concerns, the committees' recommendations, and the IU Health board's decisions were all based on quality issues and a concern for patient safety.
>
> 12. The designated evidence demonstrates that the [Appellees] satisfied the second requirement of the HCQIA immunity standards that there be a reasonable effort to obtain facts. The evidence shows that the IU Health peer committees did not rush to judgment, but thoroughly investigated the incidents and complaints when they arose, sought input from [Dr. Graves's] co-chief, requested [Dr. Graves's] written response, and even extended [Dr. Graves's] provisional privileges while they investigated and evaluated the facts. (See Exhibits 6, 9, 10, 12, 15, 17, 20, 21, 22, and 23).

13. The third requirement that "adequate notice and hearing procedures" be provided has been satisfied. [Dr. Graves] was first put on notice in December of 2008 when he was informed of his conditional six-month renewal. (See Exhibit 6). [Dr. Graves] received ample and detailed notice of the concerns about his manner of practicing and its negative effect on patient safety, he was given a fair and reasonable opportunity to respond to those concerns (including an extension of his conditional staff privileges); and was provided much more than adequate time to prepare for and participate in the IU Health internal appeal process.

14. Finally, the fourth element requires that the peer review action be taken "in the reasonable belief that the action was warranted by the facts know[n] after such reasonable effort to obtain facts and after meeting the requirement of paragraph 3". The designated evidence[] demonstrates that the participants in the peer review process reasonably thought their action was warranted and that their concerns about patient safety and quality of care issues were evidence[d] from the beginning when [Dr. Graves's] staff privileges were conditionally issued for only six months.

15. Because [Dr. Graves] has failed to rebut the presumption that the professional review action meets the preceding standards by a preponderance of the evidence, this Court finds that [the Appellees] are immune from [Dr. Graves's] breach of contract, tortious interference with contract, and emotional distress claims as all the requirements of the HCQIA have been satisfied. Thus, the immunity provisions of § 11112(a) therefore apply to [Dr. Graves's] breach of contract, tortious interference with contract and emotional distress claims. In addition, the immunity analysis under the Indiana Peer Review Act, I.C. § 34-30-15-1 to 34-30-15-23 is essentially the same as that under the HCQIA. [W.S.K., 922 N.E.2d at 690]. Thus, this Court finds that the [Appellees] are entitled to immunity under the Indiana statute also.

Appellant's App. pp. 18-19A (brackets added).

[31] Dr. Graves raises two procedural reasons on appeal outlining why he believes that the trial court erred in finding that the Appellees were entitled to immunity

under the HCQIA. First, Dr. Graves argues that he did not receive a full opportunity to call, examine, or cross-examine witnesses because his hearing ran late. Specifically, Dr. Graves argues that he did not have an opportunity to present all of the witnesses that he wanted to. The designated evidence demonstrates that Dr. Graves did not raise any procedural objections to the hearing process or allege at the time of the hearing that the process was unfair. Further, Dr. Graves does not specify which witnesses that he was unable but intended to call, but rather merely claims that the witnesses had gone home. Dr. Graves has presented no designated evidence indicating that he requested a continuance for the purpose of presenting additional witness testimony on his behalf or that he made any other procedural objections at the time of the review hearing. As such, in light of the general rule that a party is responsible for securing his own witnesses and preserving any procedural objections, *see generally Bledsoe v. State*, 263 Ind. 265, 268-270, 329 N.E.2d 592, 594-95 (1975) (providing that the absence of a defense witness did not entitled the defendant to relief where there was no showing of reasonable diligence in procuring the witness at trial and no request for a continuance was made), we conclude that the trial court correctly determined that Dr. Graves failed to rebut the presumption that he received a fair hearing by a preponderance of the evidence.

[32] Dr. Graves also argues that he did not receive a fair hearing because Dr. Kovacs responded to the review committees' questions after only reviewing the relevant medical records but without discussing the relevant cases with Dr. Graves himself. Dr. Graves essentially argues that Dr. Kovacs could not

therefore present an informed opinion because the medical records presented a version of events that differed from Dr. Graves's version of the events in question. Dr. Graves, however, cites to no authority which suggests that Dr. Kovacs was required to discuss the matter with Dr. Graves personally, that the normal course of action in similar circumstances would include discussing the allegations with someone in Dr. Graves's position, or that it was improper for Dr. Kovacs to base his opinion on his review of the relevant medical records. The designated evidence indicates that Dr. Graves had the opportunity to cross-examine all witnesses who spoke before the review committees. Dr. Graves fails to explain how he was harmed by Dr. Kovacs's alleged failure to discuss the relevant cases with Dr. Graves ahead of time, given that he had the opportunity to explore whether Dr. Kovacs's opinions would have changed based on any potential information shared by Dr. Graves during his cross-examination of Dr. Kovacs. Upon review, we again conclude that the trial court correctly determined that Dr. Graves failed to rebut the presumption that he received a fair hearing by a preponderance of the evidence.[4]

---

[4] Furthermore, to the extent that Dr. Graves argues that the trial court erred in granting summary judgment in favor of the Appellees because it failed to specifically address the merits of his breach of contract and contractual interference claims, we find no merit in this argument because the trial court properly found that the Appellees were immune from liability from these claims and Dr. Graves has provided no authority indicating that these claims would supersede the provisions of the HCQIA.

# B. Dr. Graves's Discrimination Claim

[33] In challenging the trial court's award of summary judgment in favor of the Appellees, Dr. Graves argues that the trial court erred in determining that he failed to present a *prima facie* case of discrimination.

> In order to establish a *prima facie* case of discrimination, [Dr. Graves] must present by a preponderance of the evidence that: (1) he was a member of a protected class; (2) he was qualified for the job in question; (3) he suffered an adverse employment action; and (4) the defendant treated other similarly-situated employees who were not members of the class more favorably. [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)]; [*Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1032 (7th Cir. 1998)]. If a prima facie case is established, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its decision. *Id.* If the defendant produces such a reason, the plaintiff has an opportunity to show that the articulated explanation was in fact pretext. *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. 1817; *Gonzalez*, 133 F.3d at 1032. A pretext is a "lie, specifically a phony reason for some action." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir.1999).

*Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006) (emphasis in original).

[34] In determining that the Appellees were entitled to summary judgment on Dr. Graves's discrimination claim, the trial court found as follows:

> 17. Here, [the Appellees] have produce[d] multiple exhibits providing legitimate, non-discriminatory reasons for its decisions. One example, Exhibit 21, a Quality and Performance Review Committee review of a previous meeting's minutes, list its legitimate, non-discriminatory reasons for recommending denial of Dr. Graves['s] staff privileges as including but not limited to: lack of responsiveness and appreciation for the need to quickly and accurately resolve immediate and urgent

patient care needs, persistent pattern of unprofessional behavior, failure to remedy concerns over lack of responsiveness, and potential for patient safety concerns. Because [Dr. Graves] has failed to provide evidence that the [Appellee's] explanation was pretext, this Court grants summary judgment for [the Appellees] on [Dr. Graves's] 42 U.S.C. § 1981 claims.

Appellant's App. pp. 19A-19B (brackets added).

[35] The appellate record indicates that, in addition to Exhibit 21, the Appellees designated a substantial amount of evidence outlining legitimate, patient-care related, reasons in support of the recommendation that IU Health not renew Dr. Graves's staff privileges. In response to this overwhelming amount of designated evidence, Dr. Graves did not present any specific information relating to his claim that the stated reasons for recommending the nonrenewal of his staff privileges were pretext. Dr. Graves merely presented sweeping, unsubstantiated, and unsupported allegations which he claims created a *prima facie* showing that he was treated differently than his counterparts. However, as we stated above, these statements were so generalized in nature that they failed to indicate specifically how or why he was allegedly treated differently than other physicians. Upon review, we conclude that Dr. Graves failed to designate any evidence which would raise a genuine issue of material fact as to whether the reasons proffered by the Appellees for the recommendation that IU Health not renew Dr. Graves's staff privileges were pretext.

## C. Statute of Limitations

[36] Dr. Graves also argues that the trial court erred in finding that an award of summary judgment was appropriate for Drs. Kovacs and Ross because, with

respect to Drs. Kovacs and Ross, the tortious interference with a contract claim levied by Dr. Graves was barred by the applicable statute of limitations. Initially, we note that it seems unnecessary to address Dr. Graves's challenge to summary judgment on the statute of limitations grounds in light of our conclusion that Drs. Kovacs and Ross were entitled to statutory immunity from Dr. Graves's tortious interference with a contract claim. However, to the extent it is necessary to address the merits of this challenge, we will now do so.

[37] It has long been established that "[t]he claimant bears the burden to bring suit against the proper party within the statute of limitations." *Wathen v. Greencastle Skate Place, Inc.*, 606 N.E.2d 887, 894 (Ind. Ct. App. 1993). We noted in our prior opinion relating to the parties that Dr. Graves did not dispute that his claim for tortious interference with a contract was governed by a two-year statute of limitations. *Graves*, 990 N.E.2d at 978.

[38] In determining that Drs. Kovacs and Ross were entitled to an award of summary judgment in this regard, the trial court found as follows:

> 18. Last, [Appellees] assert that Richard Kovacs, M.D. and Edward Ross, M.D. are specifically entitled to summary judgment on [Dr. Graves's] tortious interference with [a] contract claim because the applicable statute of limitations has expired. This tortious interference claim has a two-year statute of limitations. *C&E Corp. v. Ramco Industries, Inc.*, 717 N.E.2d 642, 643-56 (Ind. Ct. App. 1999).
>
> 19. [Dr. Graves's] tortious interference with [a] contract claim is barred by the two-year statute of limitations because the claim was brought on March 7, 2012, and Drs. Kovacs['s] and Ross['s] involvement with the contract ended on March 2, 2010, and the claim does not relate back to the claims against [IU Health].

20.  Under Indiana law, "[t]he claimant bears the burden to bring suit against the proper party within the statute of limitations." [*Wathen*, 606 N.E.2d at 894]. In *Seach v. Armbruster*, 725 N.E.2d 875, 877 (Ind. Ct. App. 2000), as a result of injuries from a child birth on May 10, 1995, the plaintiffs filed their initial complaint on April 29, 1997[,] alleging negligence against a hospital, several doctors, a nurse identified as Deanna Floyd, and "currently unidentified attending nurses Jane Does numbers one and two. A little over a month later, on June 3, 1997, the plaintiffs amend[ed] their claim to name labor and delivery nurse Deborah Armbruster as a defendant for the first time. *Id*. Nurse Armbruster moved for summary judgment, arguing that the action against her was barred by the statute of limitations because she was not notified within two years of the date the alleged injury occurred. *Id*. The Court [of] Appeals affirmed the trial court's granting of summary judgment for the Nurse finding that actions against the nurse did not relate back to the filing of the complaint against the hospital. *Id*. at 878-879. Similarly, in *Conrad v. Waugh*, 474 N.E.2d 130 (Ind. Ct. App. 1985), the Court of Appeals reversed the trial court's denial of summary judgment to a doctor who was belatedly added as a defendant to a complaint against a hospital.

21.  As in *Seach* and *Conrad*, in this case, Dr. Graves'[s] second amended complaint does not relate back to his earlier complaint against IU Health. Thus, this Court finds that [Dr. Graves] failed to timely file his complaint within the two year statute of limitations against Dr. Kovacs and Dr. Ross. Drs. Kovacs['s] and Ross['s] last involvement with the contract at issue ended on March 2, 2010[,] and the Plaintiff did not file his Amended Complaint adding Drs. Kovacs and Ross to the complaint until March 7, 2012. Thus, this Court finds that [] Drs. Kovacs and Ross are specifically entitled to summary judgment on [Dr. Graves's] tortious interference with [a] contract claim because [the claim was] not filed within the statute of limitations period.

Appellant's App. pp. 19B-19C (all but the ninth set of brackets added).

[39]   With respect to whether an amended complaint relates back to an original complaint, Indiana Trial Rule 15(C) provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction,

or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." However, Trial Rule 15(C) goes on to provide the following:

> An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of the action, the party to be brought in by amendment:
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> (2) knew or should have known that *but for a mistake concerning the identity of the proper party*, the action would have been brought against him.

(Emphasis added). In the instant matter, there is no allegation that Dr. Graves was mistaken as to the identity of the proper party, *i.e.*, the identity of Drs. Kovacs and Ross. As such, we conclude that the trial court properly determined that Dr. Graves's Second Amended Complaint, which was filed after the expiration of the applicable two-year statute of limitation, did not relate back to Dr. Graves's original complaint against IU Health. We therefore further conclude that the trial court did not err in determining that Drs. Kovacs and Ross were entitled to an award of summary judgment with respect to Dr. Graves's tortious interference of a contract claim.

# Conclusion

[40] In sum, we conclude that the trial court acted within its discretion in denying Dr. Graves's motion to compel and in striking certain paragraphs from Dr.

Graves's affidavit. We also conclude that the trial court did not err in granting summary judgment in favor of the Appellees. Accordingly, we affirm the judgment of the trial court.

[41] The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.